**Craig DUNHAM, Petitioner–Appellee,**

**v.**

**Brion TRAVIS, Chair, New York State Parole Board, Respondent–Appellant.**

**Docket No.  01–2779.**

United States Court of Appeals, Second Circuit.

Argued:  Sept. 18, 2002.

Decided:  Dec. 17, 2002.

Andrea G. Hirsch, New York, NY, for Petitioner–Appellee.

Robin Lamont, assistant district attorney, (Joseph Latino, assistant district attorney on the brief) for Jeanine Pirro, District Attorney of Westchester County, Westchester County District Attorney's Office, White Plains, NY, for Respondent–Appellant.

Before McLAUGHLIN and CABRANES, Circuit Judges, and LYNCH, District Judge.*

McLAUGHLIN, Circuit Judge.

Brion Travis, on behalf of the New York State Parole Board appeals from the district court's grant of Craig Dunham's petition for writ of habeas corpus. We conclude that the district court erred in granting the writ of habeas corpus. Dunham's trial counsel was not constitutionally ineffective.

## BACKGROUND

In 1996, petitioner, Craig Dunham, was convicted in the Westchester County Court of rape in the first degree and sexual abuse in the first degree. Dunham was sentenced to concurrent terms of incarceration of two to six years and one to three years' imprisonment, respectively. Dunham ultimately served four years, and is now on parole.

The victim was a woman named Georgetta Desio. Desio suffers from lupus, which is characterized by aching bones,

---

* The Honorable Gerard E. Lynch, United States District Judge for the Southern District of New York, sitting by designation.

fatigue and swelling of the joints. Due to her illness, Desio regularly took a host of medications, including various tranquilizers, steroids, and pain relievers. Because of her illness and the medications, Desio often had difficulty moving when she awakened.

In 1993, Desio began a close relationship with Craig Dunham and his wife, Denise, who lived in the same apartment building as Desio. Dunham was the superintendent of the building. Dunham and his wife often cared for Desio when she was ill. Desio and the Dunhams eventually exchanged apartment keys to facilitate this relationship. An intercom was also installed between Desio's bedroom and the Dunhams' apartment.

On the morning of April 3, 1995, Desio called 911 and declared to the police that Dunham had raped her. The 911 call was recorded and later admitted into evidence at Dunham's trial. Desio was taken to the hospital where a rape kit test revealed the presence of semen. Additional semen stains were found on Desio's bed sheet and panties. DNA testing indicated that the stains on both items were Dunham's semen.

### Desio's First Statement to the Police

After leaving the hospital on the day of the attack, Desio went to the police station where she gave a signed statement. In that statement, Desio said that Dunham had entered her bedroom early that morning and offered her Motrin. He then jumped on top of her. According to Desio, after he was on top of her for several minutes Dunham inserted his penis in her vagina, but he was unable to fully penetrate her because she was wearing a tampon. Desio stated that she told Dunham several times to get off her and that she scratched his back, "hoping that his wife would see the marks." After Dunham ejaculated, he left Desio's apartment. Desio then wiped herself off with her panties and called 911. Finally, Desio said that Dunham had done this to her several times in the past.

Dunham was arrested later the same day. After his arrest, Dunham's back was examined and scratch marks were indeed found. Dunham told the police that he did not have intercourse with Desio that day. Dunham conceded, however, that he and Desio had engaged in intercourse previously but that "it wasn't really like regular sex."

### Desio's Statement to the Grand Jury

A month later, the case was presented to a grand jury, where Desio provided sworn testimony. With respect to the April 3rd incident, Desio stated that she was "half asleep" when Dunham woke her early that morning. According to Desio, Dunham offered her three Motrin pills but she did not take them and she fell back to sleep.

Desio testified that the next thing she remembered was Dunham inside her. Subsequently, Desio said she was aware of Dunham on top of her before penetration. While Dunham was on top of her, Desio was "vaguely asleep" and knew "he was there" but she "didn't have the strength to move." Desio then repeated that she was jarred awake by Dunham's penis hitting her tampon. When asked what she was doing between the time Dunham was on top of her and when she realized that Dunham was inside of her, Desio stated that she was "sleeping off and on." She also told the grand jury that she had scratched Dunham's back while he was inside her.

Desio also testified to the grand jury about two earlier incidents where Dunham sexually assaulted her. Desio alleged that Dunham had raped her in late March 1995—just a few days before the April 3rd

incident. Desio called the police after this incident but declined to press charges. Desio also testified that Dunham had sexually abused her in December 1994.

The grand jury charged Dunham with first-degree sodomy and sexual abuse (for the December 1994 incident) and with first-degree rape and sexual abuse (for the two later incidents). On all counts, the state proceeded under alternative theories of (1) forcible rape, see N.Y. Penal Law § 130.35(1), and (2) sexual intercourse with a female who is incapable of consenting by reason of being physically helpless ("physical helplessness" rape), see N.Y. Penal Law § 130.35(2).

Dunham's counsel submitted an omnibus motion seeking, inter alia, to have the Westchester County Court (Leavitt, J.) inspect the grand jury minutes to determine whether the evidence was legally sufficient to support the charges. The court inspected the grand jury minutes and denied the motion. Thereafter, Dunham waived a jury and proceeded to a bench trial.

*The Trial*

At trial, Desio testified that, before going to bed on April 2nd, she inserted a tampon in her vagina. Also, Desio stated that, as was her routine, she removed her panties and placed them under her pillow before falling asleep.

Desio testified that on April 3rd, she was awakened by Dunham's penis hitting her tampon. She stated that the pain had "jogged" her awake and that she scratched Dunham's back while he was inside her. She stated that after Dunham ejaculated, he left her apartment. Desio testified that after Dunham left, she placed her panties between her legs to preserve his semen. She then called 911.

Dunham's defense counsel cross-examined Desio extensively, bringing out internal inconsistencies in her trial testimony and revealing her abuse of cocaine and alcohol. It came out that Desio twice had been admitted to the hospital for psychiatric treatment and once had attempted suicide.

Although defense counsel questioned Desio as to whether she was awake before Dunham penetrated her on April 3rd, counsel never impeached Desio with either her statement to the police or her grand jury testimony. Desio insisted at trial that she had not seen, heard or felt Dunham on April 3rd before his penis hit her tampon and woke her up.

The trial judge acquitted Dunham of the counts relating to the March 1995 and December 1994 incidents. As to these two incidents, the court stated that, "[w]hile Ms. Desio appeared to be sincere, and not deliberately untruthful, in her attempts to relate the December and March incidents, her psychological, medical and emotional problems during this period were so severe as to cast doubt upon the reliability of her recollections of [the] events." Citing a lack of physical evidence, the trial court found reasonable doubt as to the first two incidents.

Regarding the April 3rd incident, however, the trial judge found that the scratches on Dunham's back and the forensic evidence showing the presence of his semen on Desio's panties and bed sheets corroborated Desio's account. Thus, with respect to the April 3rd incident the judge found Dunham guilty of rape in the first degree and sexual abuse in the first degree. The district court stated that because the "sexual contact occurred *while* Ms. Desio was asleep and [was] completed before she awakened," the rape conviction was necessarily based on Desio's "physical helplessness" rather than forcible compulsion.

In August 1997, Dunham, now represented by new counsel, filed a motion under N.Y.Crim. Proc. Law § 440.10 to vacate the judgment, alleging that his trial counsel was ineffective for not having impeached Desio at trial with her statement to the police. Denying the motion, the same court (Leavitt, *J.*) stated that the allegations were insufficient to establish ineffectiveness and that, as no off-the-record facts were alleged, the issue should be raised on a direct appeal. *See* N.Y.Crim. Proc. Law § 440.10(2)(c) (requiring courts to deny a motion to vacate the judgment where "sufficient facts appear in the record" for the claim to have been raised and decided on direct appeal). Dunham first sought leave to appeal the denial of his § 440 motion. Leave to appeal was denied. He then took a direct appeal from his conviction.

On the direct appeal, Dunham alleged that the state had failed to prove that Desio was asleep at the time of penetration and that the trial court's judgment of conviction was against the weight of the evidence. Although he adverted to the § 440 motion on his appeal, Dunham raised no claim that his trial attorney was ineffective. The Appellate Division affirmed Dunham's conviction, finding the evidence "legally sufficient to establish the defendant's guilt beyond a reasonable doubt, including the element of physical helplessness." *People v. Dunham*, 258 A.D.2d 469, 682 N.Y.S.2d 919, 919 (2d Dep't 1999) (memorandum decision). The Court of Appeals denied Dunham leave to appeal.

In August 2000, Dunham filed an application for a writ of *habeas corpus* in the United States District Court for the Southern District of New York (Brieant, *J.*). Dunham alleged that his trial counsel was ineffective because (1) he had failed to impeach Desio with her inconsistent statement to the police; and (2) after receiving Desio's grand jury testimony as discovery material, he had failed to renew a motion to dismiss the April 3rd physical helplessness rape charge of the indictment. Dunham's appellate counsel conceded that he had not exhausted his state remedies with regard to the second claim. Counsel, however, alerted the district court that returning to state court would be futile since the claim was now procedurally barred because it could have been raised in Dunham's first § 440 motion but was not so raised. *See* N.Y.Crim. Proc. Law § 440.10(3)(c) (prohibiting a defendant from raising a claim in a second or subsequent § 440.10 motion that could have been raised in a previous § 440.10 motion). The district court nonetheless suggested to Dunham that he attempt to exhaust the second claim in the state courts.

Dunham then brought a second § 440 motion in the state court, asserting that his trial counsel's failure to impeach Desio with her grand jury testimony (about having been awake before penetration) and to seek dismissal of the April 3rd physical-helplessness counts based on that testimony, rendered his trial counsel ineffective. The state court denied the motion as procedurally barred and leave to appeal was likewise denied. Dunham then returned to the district court, informing it that all his claims were now exhausted. In November 2001, the district court issued a Memorandum and Order granting Dunham's petition and vacating and expunging his judgment of conviction.

The district court focused on Desio's statement to the grand jury that she had been sleeping "off and on" during the April 3rd episode. Relying exclusively on *People v. Conto*, 218 A.D.2d 665, 630 N.Y.S.2d 542 (2d Dep't 1995), the district court ruled that this grand-jury testimony was insufficient to establish a *prima facie* case of rape based on physical helplessness. The

district court therefore held that Dunham's trial counsel's failure to use Desio's grand jury testimony, either to impeach her at trial or to renew a motion to dismiss the physical helplessness charge under *Conto,* constituted ineffective assistance of counsel.

The district court glossed over many of the procedural issues involved in Dunham's petition, reasoning that Dunham's contentions amounted to a "claim of theoretical innocence as to which there should be no procedural bar." The court concluded that the inconsistencies between Desio's three "versions" of the April 3rd incident can "hardly amount to proof of anything beyond a reasonable doubt."

The New York State Parole Board (the "State") now appeals, arguing that the district court erred in granting Dunham's petition because there were independent and adequate state law grounds that the Westchester County Court relied on in denying Dunham's claim that his trial counsel was ineffective. The State also argues that Dunham's trial counsel was not constitutionally ineffective, either for failing to renew his motion to dismiss the indictment or for failing to impeach Desio at trial with her prior statements.

For the reasons set forth below, we reverse the decision of the district court granting Dunham's habeas petition.

## DISCUSSION

We review a district court's grant of a petition for a writ of *habeas corpus de novo. Cox v. Miller,* 296 F.3d 89, 98 (2d Cir.2002).

### I. *Independent and Adequate State Grounds*

It is now axiomatic that in "cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred." *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

The State argues that the Westchester County Court found independent and perfectly adequate state law grounds to deny Dunham's second § 440 motion, where Dunham alleged ineffective assistance by failing to renew the motion to dismiss the indictment upon receiving Desio's grand jury testimony. The state court (Leavitt, *J.*) summarily denied Dunham's motion, citing N.Y.Crim. Proc. Law §§ 440.10(2)(c) and 440.10(3)(c). In New York, a criminal defendant may not raise in a § 440 motion a claim that could have been raised on direct appeal. N.Y.Crim. Proc. Law § 440.10(2)(c). Similarly, a defendant may not raise in a second § 440 motion a claim that could have been raised in an earlier § 440 motion. N.Y.Crim. Proc. Law § 440.10(3)(c).

The district court effectively bypassed the procedural issues by stating without further elucidation that the "two sections of the CPL relied on by the trial court in denying the second § 440.10 motion are contradictory and mutually exclusive."

■ The Supreme Court has repeatedly cautioned "that the [independent and adequate state law ground] doctrine applies to *bar consideration* on federal habeas of federal claims that have been defaulted under state law." *Lambrix v. Singletary,* 520 U.S. 518, 523, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997) (emphasis added). However, it is not the case "that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be." *Id.* at 525. *Lambrix,* itself, concedes that hurdling the procedural questions to reach the merits of a habeas petition is justified in rare situations, "for example, if the [the underlying issue] were easily resolvable

against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Id.*

Despite the district court's ruling, we believe the underlying ineffective assistance of counsel issues are easily resolvable against Dunham. Although we do not believe the state law issues are impossibly byzantine, the district court further complicated matters by stating that Dunham's arguments amounted "to a claim of theoretical innocence as to which there should be no procedural bar."

■ A *habeas* petitioner may bypass the independent and adequate state ground bar by demonstrating. a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted. *Schlup v. Delo*, 513 U.S. 298, 321, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Thus, the district court seemingly relied on the "actual innocence" exception as an additional reason to bypass the procedural issues in this case.

" '[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). To demonstrate "actual innocence" a habeas petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327, 115 S.Ct. 851. The district court's reference to the actual innocence exception is puzzling; Dunham presented no new evidence of his innocence and did not make the necessary showing required under *Schlup* to bypass the procedural bars.

■ We see no need to further complicate this matter. In order to demonstrate actual innocence, a petitioner must make a stronger showing than is required to establish prejudice under an ineffective assistance claim. *See id.* at 327, 115 S.Ct. 851. Thus, if Dunham's ineffectiveness claim lacks merit, the actual innocence exception relied on by the district court is necessarily foreclosed.

Therefore, we conclude that this is one of those rare cases where we should address the merits of Dunham's ineffectiveness claims rather than leave the impression that a potentially meritorious claim will be denied because of procedural niceties.

## II. *Ineffective Assistance of Counsel*

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must: (1) show that counsel's performance fell below an "objective standard of reasonableness" under "prevailing professional norms," and (2) demonstrate that the alleged inefficiency resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Under the first prong of *Strickland*, the reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Aguirre*, 912 F.2d 555, 560. (2d Cir.1990) (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052). Regarding the second prong of the test, the question is whether there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. A reasonable probability is one sufficient to undermine confidence in the outcome of the trial or appeal. *Id.*

### A. *Failure to Renew the Motion to Dismiss*

■ The district court found that Dunham's trial counsel was ineffective for fail-

ing to renew a motion to dismiss the indictment when he discovered Desio's grand jury testimony.

The district court cited *People v. Conto,* 218 A.D.2d 665, 630 N.Y.S.2d 542 (2d Dep't 1995), for the proposition that a victim's testimony that she " 'slipped in and out of consciousness' and was therefore only physically helpless 'during certain intervals of her ordeal,' does not satisfy the statutory definition of physical helplessness." Noting Desio's grand jury testimony that she slept "off and on" during the episode, the district court held that this testimony was insufficient to establish a prima facie case of rape based on physical helplessness and that trial counsel was ineffective for not raising this point.

In *Conto,* the defendant (A) and a co-defendant (B) abducted their victim and brought her to an abandoned house where she was initially raped by the defendant (A). *Id.* at 543. Over the course of the following six hours, the victim was then raped by the co-defendant (B), raped by yet another co-defendant (C), and then raped a second time by the defendant (A). *Id.* At trial, she testified that "she slipped in and out of consciousness while being raped and sodomized by one of the *co-defendants.*" *Id.* (emphasis added).

Only the defendant's (A's) initial rape of the victim (and not the second rape) was considered by the jury. In finding the evidence insufficient to support the defendant's (A's) conviction for physical helplessness rape, the court in *Conto* noted that "although the complainant may have been physically helpless during certain intervals of her ordeal, the evidence does not support a finding that during the *first rape* she could not communicate an unwillingness to engage in sexual intercourse with the defendant." *Id.* (emphasis added).

The district court misread *Conto.* The victim in *Conto* was not "slipping in and

out of consciousness" when the defendant (A) raped her; she did so only later while one of the co-defendants (B or C) was raping her. The *Conto* court stated that the victim was physically able to communicate her unwillingness to have sex with the defendant (A) at the time of the initial rape but acknowledged that she may have been physically helpless during other portions of her harrowing ordeal. *Id.* The phrase "slipping in and out of consciousness" applied only to the rape and sodomy of the victim by a co-defendant (B or C); it did not describe the victim's state during the rape by the defendant (A). This language simply had no impact on the dismissal of the physical helplessness charge against the defendant (A) in *Conto.* Therefore, the district court erred in concluding that *Conto* established a *per se* rule that evidence of a victim "slipping in and out of consciousness" is insufficient to establish physical helplessness rape.

■ " 'Physical helplessness' means that a person is unconscious or for any other reason is physically unable to communicate unwillingness to an act." N.Y. Penal Law § 130.00[7]. Further, New York courts have reaffirmed that "the definition of physically helpless is broad enough to cover a sleeping victim." *People v. Sensouri-chanh,* 290 A.D.2d 886, 737 N.Y.S.2d 670, 671 (3d Dep't 2002). Desio's grand jury testimony, if believed, leads to the reasonable conclusion that she was asleep at the moment of Dunham's penetration. That is clearly sufficient to establish that she was physically helpless.

Because there were no substantive grounds to dismiss the indictment, Dunham's trial counsel was not deficient for failing to renew an already-denied motion. Accordingly, Dunham cannot satisfy either prong of the *Strickland* test.

## B. *Failure to Impeach*

■ The district court also found that Dunham's trial counsel was ineffective for failing to impeach Desio with her earlier statements—i.e., the grand jury testimony and her statement to the police. The state judge determined that there were "compelling tactical reasons" for trial counsel's decision not to impeach Desio in this fashion; namely, given that the indictment also charged Dunham with rape and sexual abuse by forcible compulsion, trial counsel may not have wished to bring Desio's earlier version of the April 3rd incident to the fact-finder's attention. Decisions about "whether to engage in cross-examination, and if so to what extent and in what manner, are ... strategic in nature" and generally will not support an ineffective assistance claim. *United States v. Nersesian,* 824 F.2d 1294, 1321 (2d Cir.1987). We agree with the state judge that trial counsel's decision was strategic and therefore fell within the wide range of acceptable professional assistance.

Even if trial counsel's decision not to impeach Desio with her prior inconsistent statements was unreasonable, Dunham suffered no prejudice from this error. The state judge, sitting as factfinder, convicted Dunham while admitting to some doubts about Desio's testimony. He did this based on his conclusion that the physical and scientific evidence "exclude beyond a reasonable doubt every hypothesis but guilt." Because the state judge expressly convicted Dunham despite doubts about Desio's credibility, there is no "reasonable probability" that further impeachment of her credibility would have changed the verdict. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

Our belief that Dunham suffered no prejudice is further confirmed by the fact that the same state judge who convicted Dunham was unmoved by one of the allegedly inconsistent statements when it was raised in the § 440 motion before him.

In sum, Dunham was found guilty after a careful analysis of the evidence by the state judge. For the reasons stated above, Dunham's trial counsel was not constitutionally ineffective under *Strickland.* Thus, there were no grounds for the district court to grant his habeas petition.

## CONCLUSION

We have considered all of Dunham's arguments and find them to be without merit. Therefore, the judgment of the district court is hereby REVERSED and the petition for the writ of habeas corpus is denied.