05-6662-pr
Zhang v. United States

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2006

(Argued: January 11, 2007         Decided: October 23, 2007)

Docket No.  05-6662-pr

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SEAN ZHANG,

       Petitioner-Appellee,

          v.

UNITED STATES OF AMERICA,

       Respondent-Appellant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

B e f o r e:   WINTER, CABRANES, Circuit Judges, and KORMAN,
District Judge.[*]

Appeal from an order of the United States District Court for the Eastern District of New York (Arthur D. Spatt, Judge) granting a petition for habeas corpus relief under 28 U.S.C. § 2255. Petitioner-appellee, a legal permanent resident of the United States, pled guilty to one count of mail fraud under 18 U.S.C. § 1341. The district court found that statements of the magistrate judge and prosecutor about the immigration consequences of the conviction affirmatively misled the

_____

[*]The Honorable Edward R. Korman, of the United States District Court for the Eastern District of New York, sitting by designation.

petitioner-appellee, thus rendering his guilty plea involuntary. We find that the statements of the magistrate judge and prosecutor -- while not full explanations -- were not sufficiently misleading to render the guilty plea involuntary. Accordingly, we vacate and remand for consideration of petitioner-appellee's other constitutional arguments.

<div style="margin-left: 40%;">

GARY SCHOER, Syosset, New York, <u>for Petitioner-Appellee</u>.

CARRIE CAPWELL, Assistant United States Attorney (Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, on the brief, and Peter A. Norling, Assistant United States Attorney, of counsel), United States Attorney's Office for the Eastern District of New York, Brooklyn, New York, <u>for Respondent-Appellant</u>.

</div>

WINTER, <u>Circuit Judge</u>:

The government appeals Judge Spatt's order granting Sean Zhang's 28 U.S.C. § 2255 petition for habeas corpus and vacating his plea of guilty to mail fraud and resultant sentence of 60 months' imprisonment. Judge Spatt found that Zhang's guilty plea was involuntary because the magistrate judge and the prosecutor had affirmatively misled Zhang during the plea colloquy with respect to the likelihood of his being deported as a result of his conviction. <u>Zhang v. United States</u>, 401 F.Supp.2d 233, 243-44 (E.D.N.Y. 2005) ("<u>Zhang I</u>"). On appeal, the government principally argues that the representations of the magistrate

2

judge and prosecutor -- that Zhang faced possible, rather than certain, deportation -- were not affirmatively misleading or prejudicial, and that the court had no greater obligation to spell out the possible collateral effects of Zhang's guilty plea.

We conclude that the statements made during the colloquy were not affirmatively misleading, and that they did not render Zhang's guilty plea involuntary. We therefore vacate the order below. Zhang has also raised a claim of ineffective assistance of counsel, which we remand to the district court for further proceedings.

BACKGROUND

Sean Zhang came to the United States from China in 1985, at the age of seven. Zhang I, 401 F.Supp.2d at 235. Zhang's family was granted asylum on the basis of his father's public criticism of Communism and the Chinese government. Id. Zhang attended Cornell University and graduated with a Bachelor of Science degree in "Food Science." Id. Although Zhang has spent the bulk of his life in the United States, does not speak Chinese proficiently, is married to an American citizen, and has long been a legal permanent resident, he has never become an American citizen. Id.

In 2001, while working as a chemist, Zhang began mixing and selling capsules of the chemical 2,4 Dinitrophenol ("DNP"). Id. In addition to its many industrial and research uses, DNP, when

3

ingested by humans, acts as a metabolic stimulant and can reduce body fat. Id. Because of the effect of DNP, the drug is banned for human use by the Food and Drug Administration. Id. Nonetheless, DNP is sometimes used by bodybuilders seeking to quickly reduce their body fat. Id. Using the screen name "DNP Guru," Zhang used a bodybuilding website to promote and sell DNP. Id. One of Zhang's customers, Eric Perrin, died as a result of ingesting DNP purchased from Zhang. Id. Another customer, James Shull, lapsed into a 10-day coma caused by DNP prepared and sold by Zhang. Id.

Zhang was indicted on ten counts of introducing a misbranded drug into interstate commerce, in violation of 21 U.S.C. § 331(a), and ten counts of mail fraud, in violation of 18 U.S.C. § 1341. Zhang entered into a plea agreement in which he agreed to plead guilty to a single count of mail fraud with a maximum penalty of 60 months and waive his right to appeal if sentenced to 60 months or less. The plea agreement stated that the government would seek an upward departure based upon Perrin's death and Shull's injuries, and included the statement, "Other penalties: Removal." The plea agreement also contained the government's loss estimate of between $70,000 and $120,000.

According to Zhang, in discussing a guilty plea, his attorney told him that any resulting deportation proceeding would be discretionary, and that deportation was unlikely given his

4

personal history and family circumstances. On June 25, 2002, Zhang entered his guilty plea before a magistrate judge. During the plea allocution, the prosecutor stated that Zhang "agrees he [is] subject to possible post sentence deportation." Plea Tr. at 14. The magistrate judge further stated that "it's not indicated as a consequence of your plea and the plea agreement but the government indicated that this felony conviction because of your immigration status could result in your deportation. Do you understand that?" Zhang answered "Yes, I understand." Id. at 15. Elsewhere in the allocution, the prosecutor noted that Zhang's counsel had reserved the right to move for a downward departure, and to challenge any loss calculation.

A year later, following a hearing pursuant to United States v. Fatico, 579 F.2d 707 (2d Cir. 1978), Zhang was sentenced to 60 months' imprisonment plus three years' supervised release, and ordered to pay $113,414.53 in restitution. At the sentencing hearing, the prosecutor noted that "there is another condition of supervised release. He may be deported. If he does, if you can put on the judgment that he should not reenter without the permission of the Attorney General." Sentencing Tr. at 410. The sentencing judge agreed, and stated that "if the defendant is deported, he's not to reenter the United States illegally without the consent of the government." Id.

Pursuant to his plea agreement, Zhang did not appeal his

5

conviction or sentence. After the time for filing a direct appeal had passed, Zhang received a Notice to Appear from the Bureau of Immigration and Customs Enforcement ("ICE"). Zhang claims at this time that he first became aware that he faced mandatory deportation as a result of having been convicted of an "aggravated felony" -- defined in relevant part for deportation purposes as "an offense that involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i). On June 17, 2004, Zhang filed a habeas corpus petition in the district court pursuant to 28 U.S.C. § 2255, seeking to vacate his conviction on two grounds: (i) that the statements of the prosecutor and the court regarding possible deportation were affirmatively misleading and violated Fed. R. Crim. P. 11; and (ii) that he received ineffective assistance of counsel regarding deportation. Zhang I, 401 F.Supp.2d at 236. The government argued that the statements during the course of sentencing were accurate because Zhang could potentially avoid deportation by applying for asylum or relief under the Convention Against Torture ("CAT").

On July 29, 2005, the district court held a hearing on whether Zhang's guilty plea was involuntary because of the characterization of the chances of deportation as less than certain. Consideration of the ineffective assistance claim was deferred.

6

On November 18, 2005, the district court issued its decision vacating Zhang's conviction. Zhang I, 401 F.Supp.2d 233. The court first held that Zhang's claim was not procedurally barred by his failure to raise it on direct appeal or by his plea agreement's waiver of collateral attack. Id. at 237. The court then found that while Second Circuit law does not require a judge to alert a defendant to the immigration consequences of a guilty plea, affirmative misinformation about those consequences can render a plea involuntary under Rule 11. Id. at 237-38. Finally, the district court determined that it was, in fact, materially misleading to inform Zhang that deportation was "merely possible, not probably or certain," and that "the misrepresentation was sufficient to render Zhang's plea constitutionally involuntary." Id. at 244.

The government appealed.

DISCUSSION

In appeals under 28 U.S.C. § 2255, "this Court reviews factual findings for clear error and questions of law de novo." Harris v. United States, 367 F.3d 74, 79 (2d Cir. 2004) (internal quotation marks omitted).

As a threshold issue, the government argues that Zhang procedurally defaulted by failing to bring his claims on direct appeal. "A motion under § 2255 is not a substitute for an appeal." United States v. Munoz, 143 F.3d 632, 637 (2d Cir.

7

1998).  In general, a claim may not be presented in a habeas petition where the petitioner failed to properly raise the claim on direct review.  Reed v. Farley, 512 U.S. 339, 354 (1994).  The rule does not generally apply to claims of ineffective assistance of counsel.  Massaro v. United States, 538 U.S. 500, 505-06 (2003).  The claim ruled on in the district court and before us now, however, is not Zhang's ineffective assistance of counsel claim, but rather the claim that Zhang's guilty plea was involuntary.  If such a claim has not been presented on direct review, the procedural default bar may be overcome only where the petitioner establishes either (1) "cause" for the failure to bring a direct appeal and "actual prejudice" from the alleged violations; or (2) "actual innocence."  Bousley v. United States, 523 U.S. 614, 622 (1998).  "To satisfy the 'cause' requirement, the petitioner must show circumstances 'external to the petitioner, something that cannot be fairly attributed to him.'" Rosario-Dominguez v. United States, 353 F.Supp.2d 500, 508 (S.D.N.Y. 2005) (quoting Marone v. United States, 10 F.3d 65, 67 (2d Cir. 1993) and Coleman v. Thompson, 501 U.S. 722, 753 (1991)).

Zhang argues that because of the (mis)representations by the court, his counsel, and the government about the deportation consequences of his plea, he was unaware of those consequences until he received a letter from the ICE, and that this serves as

"cause" justifying his failure to bring the claim on direct appeal. However, we cannot determine whether the allegedly misleading statements prejudiced Zhang and excuse his failure to bring his claims on direct appeal without first determining whether they were, in fact, affirmatively misleading. If the statements were affirmatively misleading and prejudicial, procedural default would be waived and Zhang would prevail on the merits. If the statements were not affirmatively misleading and prejudicial, procedural default would not be waived, and Zhang would lose on the merits. Either way, we must address the merits.

Prior to accepting a guilty plea, a court must advise the defendant of his right to plead not guilty and of the rights waived by pleading guilty. Fed. R. Crim. P. 11(b)(1). Rule 11 also requires a court to tell the defendant of the possible direct consequences of a guilty plea, such as the maximum prison term, the maximum fine, and the effect of possible supervised release. Id. A court need not, however, inform a defendant about the "collateral" consequences of a guilty plea. See Michel v. United States, 507 F.2d 461, 465 (2d Cir. 1974); Bye v. United States, 435 F.2d 177, 179 (2d Cir. 1970) ("[A]n accused need not be informed prior to the acceptance of his guilty plea about every conceivable collateral effect the conviction entered on the plea might have.").

9

The possibility of discretionary deportation after a guilty plea is a "collateral" consequence that need not be addressed at the plea hearing. Michel, 507 F.2d at 465-66. The passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") and the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), however, has altered the landscape of immigration law, and deportation of aggravated felons is now automatic and non-discretionary. 8 U.S.C. § 1227(a)(2)(A)(iii); see also INS v. St. Cyr, 533 U.S. 289, 325 (2001) (referring to deportation of aggravated felons as "certain"). Nonetheless, several circuits have held that "automatic" deportation under IIRIRA is still a collateral consequence that need not be addressed prior to a court's accepting a guilty plea. See El-Nobani v. United States, 287 F.3d 417, 421 (6th Cir. 2002) ("[I]t is clear that deportation is not within the control and responsibility of the district court, and hence, deportation is collateral to a conviction."); United States v. Amador-Leal, 276 F.3d 511, 516-17 (9th Cir. 2002) ("[W]hether an alien will be removed is still up to the INS. There is a process to go through, and it is wholly independent of the court imposing sentence . . . . Removal is not part of the sentence."); and United States v. Gonzalez, 202 F.3d 20, 27 (1st Cir. 2000) ("However 'automatically' [the defendant's] deportation . . . might follow from his conviction, it remains beyond the control

10

and responsibility of the district court in which that conviction was entered and it thus remains a collateral consequence thereof.").

Although we have acknowledged the existence of the issue, United States v. Cuoto, 311 F.3d 179, 190 (2d Cir. 2002), we have not decided whether "automatic" deportation is a collateral consequence of a guilty plea that need not be mentioned or a direct consequence that required discussion during the plea proceeding.  Once again, the issue is not before us.  As the district court noted, "[w]hether automatic deportation is a direct or collateral consequence is of no matter in this case because the court did address deportation at the plea hearing." Zhang I, 401 F.Supp.2d at 239.  We agree.

"Rule 11 sets forth requirements for a plea allocution and is designed to ensure that a defendant's plea of guilty is a voluntary and intelligent choice among the alternative courses of action open to the defendant."  United States v. Andrades, 169 F.3d 131, 133 (2d Cir. 1999) (internal quotation marks and citation omitted).  To successfully challenge a guilty plea conviction based on a Rule 11 violation, a petitioner must establish that the violation constituted a "constitutional or jurisdictional" error, or establish that the error resulted in a "complete miscarriage of justice," or in a proceeding "inconsistent with the rudimentary demands of fair procedure."

United States v. Timmreck, 441 U.S. 780, 783 (1979) (internal quotation marks omitted).  In addition, the petitioner must demonstrate that the violation was prejudicial -- where the error was not preserved, this requires the petitioner to show that "the violation affected substantial rights and that there is a reasonable probability that, but for the error, he would not have entered the plea."  United States v. Vaval, 404 F.3d 144, 151 (2d Cir. 2005) (internal quotation marks and citation omitted).

Given this legal background, the principal issue in the present matter is whether the statements that Zhang was subject to "possible post sentence deportation," Plea Tr. at 14, that his conviction "could result" in deportation, id. at 15, and that he "may be deported," Sentencing Tr. at 410, were, in fact, accurate.  If the statements were accurate at the time they were made, then they could not reasonably be said to be misleading and could not have rendered Zhang's guilty plea involuntary.

The district court assumed that Zhang's conviction was for an aggravated felony subjecting him to automatic deportation, noting that it was "undisputed in this case that Zhang's mail fraud conviction constitutes an aggravated felony under the statute."  Zhang I, 401 F.Supp.2d at 241.  As a result, the district court's analysis focused on whether Zhang could realistically apply for relief from automatic deportation, such as asylum or protection under the CAT.  Id. at 242.  The district

court determined that Zhang, as an aggravated felon, would be "ineligible for discretionary relief from removal such as asylum, 8 U.S.C. § 1158(b)(2)(B)(I); restriction on removal, 8 U.S.C. § 1231(b)(3)(B); cancellation of removal, 8 U.S.C. § [1229b]; and voluntary departure, 8 U.S.C. § [1229c]." Id. at 241. Likewise, even if entitled to protection under CAT, an aggravated felon who had been sentenced to at least 5 years' imprisonment is entitled only to have his removal deferred to a country where he is less likely to be tortured. 8 C.F.R. § 208.17(a). Under such circumstances, and assuming Zhang's conviction was indisputably for an aggravated felony, Judge Spatt found that "possible," "could," and "may" were misleading, given that Zhang's deportation was virtually certain. Zhang I, 401 F.Supp.2d at 242.

At the time the allegedly misleading statements were made, however, it was far from clear that Zhang's conviction would ultimately constitute an aggravated felony. Indeed, the question of whether Zhang pled guilty to an aggravated felony is still in dispute. For deportation purposes, the term "aggravated felony" is defined, in relevant part, as "an offense that involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i). Thus, mail fraud does not constitute an aggravated felony unless the loss exceeds $10,000. Zhang pled guilty to Count One of the superseding

13

indictment -- a single count of mail fraud involving the sale of DNP to an individual in New York who was not James Shull or Eric Perrin. At the time of the plea proceeding, it was not known with certainty whether the loss amount for the single count to which Zhang was pleading guilty would exceed $10,000. While the plea agreement contained a loss estimate of $70,000 to $120,000, Zhang explicitly reserved the right to challenge the loss calculation at sentencing, and the parties struck the line in the plea agreement stating that "[t]he defendant agrees with this guidelines calculation." Indeed, Zhang -- in pressing his claim of ineffective assistance of counsel -- argues in his brief before this court that the count to which he pled guilty did not involve a loss of $10,000, and that his "[c]ounsel could have easily insured that [Zhang] would not face deportation by specifying the exact amount of money that was involved in the single transaction for which [Zhang] pleaded guilty . . . ." Br. for Petitioner-Appellee at 25. Thus, at the time of the plea proceeding, neither the court nor the government could know that Zhang's conviction would qualify as an aggravated felony, subjecting him to "automatic" deportation.[1] In such circumstances, the statement that Zhang faced "possible" deportation was, in fact, completely accurate.

The statements thus served to put Zhang on notice that his guilty plea had potential immigration consequences, and provided

14

an opportunity to pursue those consequences more fully with his attorney or with an immigration specialist. That is all that is required. To be sure, the statements were not a full elaboration of the immigration consequences of a guilty plea, but they were not misleading or prejudicial in any way. To hold a sentencing court that has decided to address the topic to a higher standard of detail in explaining possible immigration ramifications -- a notoriously complex and constantly shifting area of law -- would likely have the perverse effect of encouraging sentencing courts simply to avoid the issue entirely, lest a reviewing court find a statement to be, in retrospect, misleading. That Zhang's counsel allegedly failed to apprise Zhang more fully of the immigration consequences of his plea, and allegedly failed to take actions which would have shielded Zhang from mandatory deportation, serves as the basis for Zhang's claim of ineffective assistance of counsel, which we now remand to the district court for consideration.

CONCLUSION

For the foregoing reasons, we vacate the order of the district court and remand for further consideration consistent with this opinion.

FOOTNOTES

1. Zhang suggests that the government's contention that he was not convicted of an aggravated felony contradicts the government's position below, where it assumed that Zhang's conviction constituted an aggravated felony. As noted, however, Zhang himself seeks to preserve the claim that the count to which he pled guilty did not constitute an aggravated felony at the time of the plea colloquy and that it was only the incompetence of his attorney that prevented the record from clearly showing that his crime was not an aggravated felony.