Sean D. ZHANG, Petitioner,

v.

UNITED STATES of America, Respondent.

No. 04–cv–3261(ADS).

United States District Court, E.D. New York.

April 7, 2008.

Gary Schoer, Esq., Syosset, NY, for the Petitioner.

Benton J. Campbell, United States Attorney, Eastern District of New York, by Carrie Capwell, Assistant U.S. Attorney, Central Islip, NY, for the Respondent.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The petitioner Sean D. Zhang ("Zhang" or the "Petitioner") moves the Court for an Order vacating or correcting his sentence pursuant to 28 U.S.C. § 2255. In support of his petition, Zhang contends that his counsel was ineffective for failing to properly advise him of the deportation consequences of his guilty plea and failing to take actions which would have shielded him from mandatory deportation.

## I. BACKGROUND

### A. Factual Background

In 1985, Zhang emigrated from China at the age of seven. Zhang and his family received political asylum in 1989 to protect them from the persecution of the Chinese government. Zhang's father was a profes-

sor at the National University at Singapore and published numerous articles criticizing the Communist government and its use of Marxism Socialism. English is the only language Zhang speaks proficiently. He married a United States citizen and is a permanent resident, but he is not a citizen of the United States.

In 2001 Zhang was a practicing chemist with a Bachelor of Science degree in "Food Science" from Cornell University. In April 2001, Zhang began selling the chemical 2, 4 Dinitrophenol ("DNP") over the internet to bodybuilders who were interested in using it to lose body fat. DNP is a metabolic stimulant known as an "uncoupler" and a toxic dye used in biochemical studies of oxidative processes. Stedmans Medical Dictionary (27th ed. 2000). DNP is a chemical substance that is banned by the Food and Drug Administration.

Using the screen name "DNP Guru" on a website known as "Elitefitness.com," Zhang advocated and sold the chemical DNP. Zhang mixed and prepared the DNP capsules himself, and sold them for human consumption. Eric Perrin died as a result of ingesting the DNP he purchased from Zhang. Another customer, James Shull, was hospitalized in a coma for more than ten days as a result of the DNP he purchased from Zhang.

On September 21, 2001, Zhang was arrested in Bloomington, Indiana, and charged with two counts of introducing into interstate commerce a drug, DNP, that had been misbranded with the intent to defraud and mislead, in violation of 21 U.S.C. § 331(a). Following his arrest, Zhang was indicted on two counts of introducing a misbranded drug into interstate commerce in violation of 21 U.S.C. § 331(a). Thereafter, pursuant to a superseding indictment, Zhang was charged with ten counts of introducing a misbranded drug into interstate commerce and ten counts of mail fraud, in violation of 18 U.S.C. § 1341.

## B. Procedural History

After jury selection, the Government determined that certain documents Zhang intended to introduce into evidence at the trial had been fraudulently prepared. Zhang was advised of the Government's determination and that, as a result, his chances of prevailing at trial were greatly reduced. Immediately prior to the trial, Zhang agreed to plead guilty to a single count of mail fraud involving the sale of DNP to an individual in New York who was not James Shull or Eric Perrin.

As a condition to accepting the plea agreement, Zhang waived his right to appeal if his sentence was 60 months or less. In addition, Zhang was informed that the Government would move for an upward departure at sentencing based upon Perrin's death and Shull's injuries. Further, the plea agreement stated that the count of mail fraud carried a maximum penalty of 60 months and "Other penalties: Removal."

### 1. The Plea Allocution

On June 25, 2002, Zhang entered his guilty plea before a magistrate judge. During the plea allocution, the Government stated that Zhang "agrees he[ is] subject to possible post sentence deportation." Tr. at 14. Following up, the magistrate judge stated: "it's not indicated as a consequence of your plea and the plea agreement but the government indicated that this felony conviction because of your immigration status could result in your deportation. Do you understand that?" Zhang replied, "Yes, I understand." Tr. at 15.

In the plea agreement and during the allocution, on behalf of Zhang, his counsel

reserved the right to challenge the Government's loss calculation of $70,000 to $120,000. Tr. at 17–19. Specifically, the Court noted that the Defendant did not agree to the loss calculation. Tr. at 18. Throughout the allocution, Zhang did not admit to a specific loss amount.

The magistrate judge concluded the proceedings by recommending that this Court accept the plea of guilty to count one of the superseding indictment.

### 2. *The Sentencing*

On June 27, 2003, following a *Fatico* hearing, Zhang was sentenced by this Court to 60 months, the maximum term of imprisonment, three years of supervised release, and $113,414.53 in restitution. Again, the government indicated to the Court that "there is another condition of supervised release. He may be deported. If he does, if you can put on the judgment he should not reenter without the permission of the Attorney General." Sentencing Tr. at 410. The Court agreed, and stated that "if the defendant is deported, he's not to reenter the United States illegally without the consent of the government." Sentencing Tr. at 410.

At sentencing, the Court inquired as to the representation of Zhang by attorney Stuart Grossman. Specifically, the Court asked:

Mr. Zhang, are you satisfied with the representation provided to you by your attorney Stuart Grossman?

Zhang responded:

Yes, I am, your Honor.

Sentencing Tr. at 382. In addition, the Court observed:

the representation that you have been afforded Mr. Zhang, Mr. Grossman, has been superb ... You have comported yourself in accordance with the highest traditions of the criminal defense bar, and I compliment you for it.

Sentencing Tr. at 399. Zhang did not directly appeal his conviction or sentence to the Second Circuit.

### C. Zhang's Section 2255 Petition

On June 17, 2004, Zhang, with new counsel, timely filed a motion to vacate his conviction pursuant to 28 U.S.C. § 2255, challenging the validity of his plea due to a Rule 11 violation, and claiming that his counsel was ineffective. Zhang alleged that his plea of guilty was not entered voluntarily due to the representations by the Court and his counsel that deportation was not a mandatory consequence of being convicted of the aggravated felony that he plead guilty to, namely mail fraud. Zhang contended that had he pleaded guilty to the misbranding a drug counts, as opposed to mail fraud, he would have been subject to the same or higher guidelines range, but would not be facing automatic deportation.

### D. This Court's Decision

On November 18, 2005, this Court granted the Petitioner's motion to vacate and set aside his guilty plea and sentence. This Court determined that Zhang had been convicted of an aggravated felony, and that the Rule 11 colloquy was misleading and a misrepresentation. The Court found that, at the plea the Government stated that Zhang was facing "possible" deportation and the Court said that he "could" be deported. The Court determined that, although it was unintentional, this was an affirmative misrepresentation, because under current immigration law, Zhang faced certain deportation for his conviction of mail fraud—an aggravated felony. As a result of its finding, this Court did not reach Zhang's ineffective assistance of counsel claim. *Zhang v. United States*, 401 F.Supp.2d 233 (E.D.N.Y.2005).

## E. The Second Circuit's Decision

On appeal, the Second Circuit determined that the statements made during the colloquy were not affirmatively misleading and did not render Zhang's guilty plea involuntary. *Zhang v. United States*, 506 F.3d 162 (2d Cir.2007). The Second Circuit vacated this Court's Order and remanded the case for consideration of Zhang's ineffective assistance of counsel claim. Specifically, the Second Circuit noted:

> That Zhang's counsel allegedly failed to apprise Zhang more fully of the immigration consequences of his plea, and allegedly failed to take actions which would have shielded Zhang from mandatory deportation, serves as the basis for Zhang's claim of ineffective assistance of counsel, which we now remand to the district court for consideration.

*Id.* at 169.

Further, the Second Circuit noted that the statements made by the Court during the plea colloquy "served to put Zhang on notice that his guilty plea had potential immigration consequences, and provided an opportunity to pursue those consequences more fully with his attorney or with an immigration specialist." *Id.* In addition, the Second Circuit found that "the question of whether Zhang plead guilty to an aggravated felony is still in dispute." *Id.* at 168.

## F. As To Zhang's Contentions

Following the Second Circuit's decision, this Court permitted the parties to submit additional briefing of the single remaining issue, Zhang's ineffective assistance of counsel claim.

The Petitioner contends that his counsel was ineffective because, at the time of his plea, counsel informed him of several factors that would help him avoid deportation, such as having been previously granted asylum; being married to an American citizen; and his lack of criminal history. However, contrary to counsel's advice, these factors apparently could not help Zhang avoid deportation upon conviction of an aggravated felony. Zhang contends that he was prejudiced as a result of his counsel's error because, as set forth in this Court's prior decision, "the Court finds that the Petitioner has shown that he was prejudiced by the misinformation concerning the prospects of his deportation when he pled guilty." *Zhang*, 401 F.Supp.2d at 237–38.

The Petitioner further contends that, although he believes that he did not commit an aggravated felony, by all appearances on the existing record, he was convicted of an aggravated felony. The Petitioner contends that although that issue will be decided by the Immigration Court, this Court must first decide the issue in order to reach his ineffective assistance of counsel claim. Zhang contends that his counsel was ineffective because he failed to establish on the record of conviction that the actual loss amount related to his guilty plea was less than $10,000. Zhang further claims that during the sentencing hearing, his counsel conceded that Shull lost at least $22,000 with regard to his transaction with Zhang. In this regard, Zhang contends that his counsel should have made the record clear, but failed to do so.

Zhang contends that if could re-plead, then he will be able to clearly establish on the record that the loss was less than $10,000 and his conviction could not be considered an aggravated felony.

## G. As To The Government's Contentions

The Government contends that Zhang's counsel was not ineffective because he did not affirmatively misrepresent the depor-

tation consequences of Zhang's guilty plea. The Government notes that, according to the Second Circuit, whether Zhang pleaded guilty to an aggravated felony is "still in dispute." The Government contends that Zhang was not convicted of an aggravated felony because the $10,000 loss amount is not an element of the mail fraud statute; no loss amount was alleged in the indictment; and during the plea proceeding, Zhang specifically disagreed with the Government's loss estimate contained in the plea agreement.

In addition, Zhang's attorney reserved the right to challenge the Government's loss calculation, preventing Zhang from admitting to the loss estimate. The Government contends that by ensuring that Zhang did not agree to a particular loss amount in the plea agreement or during the plea colloquy, counsel improved Zhang's chances of avoiding deportation. Moreover, given the complexity of immigration law, counsel advised Zhang that he could be deported and advised him to seek the advice of an immigration attorney.

The Government further contends that Zhang was not prejudiced by his attorney's advice. Even if counsel affirmatively misrepresented the deportation consequences of his guilty plea, there is no evidence that Zhang would have gone to trial. Zhang pled guilty because the Government discovered that he had produced fraudulent documents and planned to introduce them at the trial. Moreover, Zhang did not move to withdraw his guilty plea during the one year period prior to his sentencing.

### H. Counsel's Representation of Zhang

Stuart Grossman, Esq. represented Zhang from his indictment through sentencing and has submitted an affidavit regarding his representation of Zhang. He affirms that he advised Zhang that he was subject to deportation, but that there were certain factors that "could be helpful to him," including the fact that he had lived in the United States for many years; had been granted asylum; had no criminal history; and was married to a United States citizen. However, Grossman advised Zhang that if he was concerned about deportation, he should consult with an immigration attorney. Grossman Aff. at ¶ 4.

Grossman states that after Zhang was indicted for mail fraud, pursuant to a superseding indictment, he advised Zhang that those charges increased his likelihood of being deported. As a result, Grossman repeatedly requested that the Government permit Zhang to plead guilty to the Section 331 charges, but the Government repeatedly refused his offers. Grossman Aff. at ¶ 5.

When the Government informed Grossman that the documents Zhang intended to introduce in his support at trial were fraudulent, Grossman advised Zhang that his chances of prevailing at trial were greatly reduced. He discussed the plea offer with Zhang, and pursuant to his request, the Government agreed to strike the language which stated that Zhang agreed to the Government's guidelines calculation and loss estimate. Grossman Aff. at ¶ 7.

Prior to Zhang's plea allocution, Grossman again advised Zhang that he was subject to deportation, but should consult with an immigration attorney. Zhang entered his guilty plea and did not inquire any further regarding deportation. On June 27, 2003, after the Fatico hearing had begun, Zhang withdrew his objections to the presentence investigation report and agreed with the Government's application for an upward departure to 60 months, based on the death of Eric Perrin and the injuries sustained by James Shull. Zhang did not agree to any specific loss amount and argued in his sentencing letter that he

had only made $7,000 from sales of DNP. Grossman Aff. at ¶¶ 8–9.

Zhang was sentenced to 60 months imprisonment and restitution in the amount of $113,414.53, based on the losses incurred by James Shull. Grossman Aff. at ¶ 10.

## II. *DISCUSSION*

### A. Standard of Review

Title 28 U.S.C. § 2255 provides a post conviction remedy for federal prisoners similar to the historic writ of habeas corpus available to state prisoners that is now codified in § 2254. Pursuant to § 2255, a federal prisoner in custody "may move the court which imposed the sentence to vacate, set aside or correct the sentence" on the basis that it "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . ." 28 U.S.C. § 2255.

 As stated by the Second Circuit, "because requests for habeas corpus relief are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Ciak v. United States*, 59 F.3d 296, 301 (2d Cir.1995) (citing *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816 (1982)). As a result, prisoners seeking habeas corpus relief pursuant to § 2255 must show both a violation of their Constitutional rights and "substantial prejudice" or a "fundamental miscarriage of justice." *Id.* at 301.

### B. As To Whether Zhang Was Convicted Of An Aggravated Felony

 In its November 2005 Decision, this Court determined that Zhang had been convicted of an aggravated felony, and therefore, was subject to mandatory deportation. *Zhang*, 401 F.Supp.2d 233. In fact, as discussed in this Court's prior Decision, both the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), contain comprehensive amendments to the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1101 et seq. Under § 237(a)(2)(A)(iii) of the INA (8 U.S.C. § 1227(a)), noncitizens are subject to deportation or removal based on the commission of an "aggravated felony." The INA expressly defines the term "aggravated felony" under § 1101(a) to include a list of 21 categories of offenses. INA § 1101(a)(43) defines "aggravated felony" to include an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $ 10,-000." *Id.* § 1101(a)(43)(M). As the Second Circuit noted, "deportation of aggravated felons is now automatic and nondiscretionary." As a result, this Court previously found that Zhang's mail fraud conviction constituted an aggravated felony under the statute.

 However, the Government argues that Zhang's conviction is not an aggravated felony. In fact, in its Decision, the Second Circuit noted that whether Zhang pleaded guilty to an aggravated felony "is still in dispute." As the Second Circuit stated, mail fraud does not constitute an aggravated felony unless the loss exceeds $10,000.

In the present case, Zhang pleaded guilty to one count of mail fraud. However, the count to which Zhang pleaded involved the sale of DNP to a victim in New

York. Zhang did not plead guilty to any count involving James Shull or Eric Perrin. Although restitution in the amount of $112,969.53 was ordered, that amount was related to losses suffered by Shull, not to the specific mail fraud count to which Zhang pleaded guilty.

The Second Circuit has determined that a restitution order should not be relied upon in determining whether a conviction is an aggravated felony. Specifically, the Court found that "restitution set by a judge is based on a loss amount established by a preponderance of the evidence and need not be tied to the facts admitted by a defendant's plea." *Dulal–Whiteway v. United States Dep't of Homeland Sec.,* 501 F.3d 116, 130 (2d Cir.2007). Further, the Court held that "[f]or convictions following a plea, the BIA may rely only upon facts to which a defendant actually and necessarily pleaded in order to establish the elements of the offense, as indicated by a charging document, written plea agreement, or plea colloquy transcript." *Id.* at 131.

As a result, the restitution amount should not be relied upon in determining whether Zhang pleaded guilty to an aggravated felony. Further, the $10,000 loss amount is not an element of the mail fraud statute. In addition, as the Government contends, during the plea proceeding, Zhang specifically disagreed with the Government's loss estimate of $70,000 to $120,000, and reserved the right to challenge that amount. Zhang's specific disagreement was further noted during the plea colloquy. As a result, Zhang did not specifically admit to a loss amount greater than $10,000.

Zhang contends that, during the sentencing proceeding, which is part of the record of conviction, defense counsel stated "my client will agree to a $22,000 restitution for Mr. Shull," making it appear that there was a loss of more than $10,000 and that, as a result, Zhang has been convicted of an aggravated felony. However, Zhang did not actually plead guilty to any crime involving Shull; rather, Zhang pleaded guilty to mail fraud unrelated to Shull or the injuries suffered by Shull. As a result with reasonable certainty, it is unlikely that this $22,000 will be considered by the immigration court.

Accordingly, despite this Court's previous findings, in light of the Second Circuit's recent decision in *Dulal–Whiteway v. United States Dep't of Homeland Sec.,* 501 F.3d 116 (2d Cir.2007), it appears that Zhang was not convicted of an aggravated felony. However, because, as the Second Circuit noted in its decision in the present case, whether Zhang plead guilty to an aggravated felony "is still in dispute," for purposes of the present motion, in order to reach the ineffective assistance of counsel issue, the Court will assume that Zhang was, in fact, convicted of an aggravated felony. Accordingly, the Court will address Zhang's ineffective assistance of counsel claims in that scenario.

## C. Ineffective Assistance of Counsel

In order to prevail on an ineffective assistance of counsel claim, a petitioner must establish that his counsel performed deficiently and that the deficiency caused actual prejudice to his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Dunham v. Travis,* 313 F.3d 724, 730 (2d Cir. 2002). Under the first prong, the court must "indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. The petitioner may prove the deficiency prong by establishing that his attorney's conduct fell "outside the wide range of professionally competent assistance...."

*Id.* at 690, 104 S.Ct. 2052. He may establish prejudice by showing a "reasonable probability" exists that, but for the deficiency, "the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. "A reasonable probability is one sufficient to undermine confidence in the outcome of the trial or appeal." *Dunham,* 313 F.3d at 730 (citing *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052). Also, the Second Circuit has instructed that a reviewing court should be "highly deferential" to counsel's performance, because " 'it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.' " *Pratt v. Greiner,* 306 F.3d 1190, 1196 (2d Cir.2002) (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052).

### D. As To Zhang's Contentions

#### 1. *As to Counsel's Performance*

Zhang contends that his counsel was ineffective for advising him that a conviction could subject him to deportation and that certain factors such as his length of time in the United States and marriage to a United States citizen could help him avoid deportation.

■ According to the Second Circuit, "an attorney's failure to inform a client of the deportation consequences of a guilty plea, without more, does not fall below an objective standard of reasonableness." *United States v. Couto,* 311 F.3d 179, 187 (2d Cir.2002). However, "an attorney's affirmative misrepresentations on the subject might well constitute ineffective assistance." *Id.* In *Couto,* the defendant's counsel "assured her that they could deal with her immigration problem after the guilty plea, and said there were many things that could be done to prevent her from being deported, including asking the judge for a letter recommending against

deportation." *Id.* at 183. The Second Circuit determined that counsel had affirmatively misled the defendant, and as a result, the defendant met the first prong of the Strickland test. *Id.* at 188. Further, the Court found that the defendant would have proceeded to trial if not for her attorney's misrepresentations because she immediately moved to withdraw her guilty plea upon learning the deportation consequences of her plea. *Id.* In *Couto,* deportation was not even mentioned during the defendant's plea colloquy.

■ Notably, the facts of the present case differ significantly from those in *Couto.* In the present case, as discussed, Grossman advised Zhang that he was subject to deportation and the issue arose during the plea colloquy. As a result, unlike the defendant in *Couto,* Zhang was aware of the possibility of deportation. In addition, Grossman did not merely inform Zhang that deportation was an issue to be considered at a later date, as did counsel in *Couto.* Moreover, as discussed, it remains unclear whether Zhang was convicted of an aggravated felony, and therefore, Grossman's comment was not a misrepresentation.

Even assuming Zhang was convicted of an aggravated felony, Grossman specifically informed him that he was subject to deportation and notably, told him to seek immigration counsel. Grossman also commented that there were certain factors that "could be helpful to" Zhang, including the fact that he had lived in the United States for many years; had been granted asylum; had no criminal history; and was married to a United States citizen. Although Grossman was mistaken, he did not make affirmative misrepresentations as discussed in *Couto.* In *Couto,* counsel advised the defendant that there were many things that could be done to prevent her

from being deported. In the present case, Grossman merely stated that certain factors "could be helpful." Although Grossman provided some inaccurate advice, he did not advise Zhang that any factor would actually prevent deportation or belittle the deportation consequences of the guilty plea. Grossman did not make any comments that would have caused Zhang to believe that he was free from deportation or that deportation was even unlikely. Rather, Grossman advised Zhang that if was concerned about deportation, he should consult with an immigration attorney.

Counsel's advice placed Zhang on notice that there were immigration consequences to his guilty plea and that the issues were sufficiently serious to warrant review by an immigration attorney. Immigration is a complicated area of the law and Grossman was wise to advise Zhang to seek advice from a specialized immigration attorney.

■ Zhang further contends that counsel was ineffective for failing to take actions which would have shielded him from mandatory deportation. Specifically, Zhang contends that counsel failed to establish, on the record, that the count of conviction to which he pleaded guilty involved a loss of less than $10,000. However, as a result of counsel's representation, Zhang did not agree to any specific loss amount and argued, in his sentencing letter, that he had only made $7,000 from sales of DNP. In fact, Zhang did not agree to a specific loss amount in his plea agreement or during his plea colloquy. As a result, Grossman helped to avoid proof on the record that there was a loss greater than $10,000, and therefore, an aggravated felony.

Zhang contends that "an immigration judge would view this as having been a perfect opportunity for an effective defense counsel to state that the loss caused by his client was less than $10,000 and that counsel's failure to do so could only mean that the loss was not less than $10,000." The Court disagrees. Counsel ensured that Zhang did not admit to a loss amount in excess of $10,000. There is no evidence that an immigration court would assume a loss of more than $10,000. In fact, the immigration court must find clear and convincing evidence of an aggravated felony.

■ Although Zhang also contends that, at sentencing, counsel agreed to restitution in the amount of $22,000 with regard to Shull's losses, Zhang again fails to demonstrate that counsel was ineffective. As the Government correctly contends and Zhang admits, Shull's losses are not part of the count of conviction. Zhang pleaded guilty to one count of mail fraud that is unrelated to any crime involving Shull. As a result, defense counsel's statement during sentencing, although part of the record of conviction, should not be considered by the immigration court in reaching a decision regarding whether Zhang was convicted of an aggravated felony.

As such, the Court finds that Zhang fails to demonstrate that his attorney's conduct fell "outside the wide range of professionally competent assistance. . . ." *Strickland,* at 690, 104 S.Ct. 2052 As such, the Court finds that counsel's representation of Zhang was not ineffective.

### 2. *As to Prejudice*

■ Although the Court need not reach the issue of prejudice, for purposes of completing the record, the Court finds that Zhang was not prejudiced by counsel's alleged errors. The Court notes that, in its prior decision, it found that Zhang was prejudiced by the information from the Court concerning the prospects of his deportation. However, upon consideration of

the present facts, the Court finds that Zhang was not prejudiced by the information received from his counsel.

Even if Zhang had been informed that a conviction for an aggravated felony would result in mandatory deportation, there is no evidence that he would have chosen to proceed to trial. In fact, Zhang did not plead guilty until the morning that his trial was scheduled to begin, after a jury was selected. He only decided to plead guilty after the Government discovered that various documents he intended to offer into evidence at trial were fraudulent. As a result, Zhang is unable to show that a "reasonable probability" exists that, but for the deficiency, "the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

Accordingly, the Court finds that counsel did not render ineffective assistance to Zhang. As such, the motion by the Petitioner pursuant to 28 U.S.C. § 2255 to vacate and set aside his guilty plea and sentence is denied.

## III. *CONCLUSION*

For the reasons set forth above, it is hereby

**ORDERED,** that the Petitioner's motion to vacate and set aside his guilty plea and sentence is **DENIED;** and it is further

**ORDERED,** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**