PRESENT:  All the Justices

BETTY BUSTILLO FUENTES

OPINION BY
v.  Record No. 141890                          JUSTICE WILLIAM C. MIMS
                                                    October 29, 2015

HAROLD CLARKE, DIRECTOR,
 VIRGINIA DEPARTMENT OF CORRECTIONS


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
William T. Newman, Jr., Judge


In this appeal, we consider whether a lawful permanent resident of the United States

received ineffective assistance of counsel when advised about a plea agreement pertaining to a

charge of grand larceny, a crime involving moral turpitude rendering her deportable under 8

U.S.C. § 1227(a)(2)(A)(i).

## I.  BACKGROUND AND MATERIAL PROCEEDINGS BELOW

Betty Bustillo Fuentes, a lawful permanent resident of the United States, was indicted on

a single count of grand larceny, in violation of Code § 18.2-95.  In March 2012, Fuentes pled

guilty pursuant to a plea agreement under Rule 3A:8(c)(1)(C).  In the plea agreement, Fuentes

admitted that she was guilty of the crime and acknowledged that her plea "may place [her] at risk

for deportation if [she was] not a citizen of the United States."  She also stated in it that she was

represented by counsel, was satisfied with the representation, had read the plea agreement and

reviewed it with counsel, and was entering the plea voluntarily.  She and the Commonwealth

agreed to a sentence of 3 years' incarceration, with all 3 years suspended subject to specified

conditions.

At her plea hearing, Fuentes reaffirmed that she had read the agreement in her native

language, that she understood it, and that she had the opportunity to discuss it with counsel.  She

said that she discussed with counsel the Commonwealth's evidence and her possible defenses.

She reaffirmed that she had chosen to plead guilty to the charge because she was in fact guilty of the crime. She reaffirmed that her plea was voluntary. She reaffirmed that she was satisfied with her counsel's representation. The circuit court thereafter found that her plea was "freely, voluntarily, and intelligently entered with an understanding of the . . . consequences of entering a plea." The court then accepted her plea, found her guilty of the crime, and imposed the sentence agreed by the parties in the plea agreement.

In March 2014, Fuentes filed a petition for a writ of habeas corpus asserting that her trial counsel failed to advise her of the immigration consequences of her plea. She asserted that she first learned of the immigration consequences in June 2012 when she was served with a notice to appear for removal proceedings under 8 U.S.C. § 1227(a)(2)(A)(i). She asserted that her trial counsel had provided ineffective assistance because he failed to advise her that her plea would result in removal.

The Director of the Department of Corrections filed a motion to dismiss Fuentes' petition, asserting that she had indicated her satisfaction with the representation provided by her trial counsel both in the plea agreement and at the plea hearing. The Director argued that Fuentes had not satisfied the prejudice prong of an ineffective assistance claim because she failed to show that she would have rejected the plea agreement and gone to trial if she had received competent advice, as required by Hill v. Lockhart, 474 U.S. 52, 59 (1985). Further, the evidence against her was overwhelming and she had no defense. Thus, if she had gone to trial, she would have been convicted and would still have faced removal. By accepting the plea agreement and pleading guilty, she avoided incarceration before removal. However, she would have been subject to removal upon conviction whether she pled guilty or went to trial.

Fuentes filed a reply in which she argued that the strength of the prosecution's evidence is insufficient to show lack of prejudice because courts must consider the individual alien's risk-

2

reward calculation. Her primary interest in entering the plea was to avoid separation from her three minor children; however, her removal from the United States will result in precisely such a separation. She therefore did not benefit from her bargain and it would have been rational for her to prefer standing trial to pleading guilty. Further, rejecting the plea agreement would likely have led to a different agreement requiring her to serve some incarceration but permitting her to plead guilty to a non-removable offense.

At an evidentiary hearing on Fuentes' petition, the circuit court heard evidence from Fuentes, her trial counsel, and two witnesses who testified about Fuentes' guilt of the underlying grand larceny charge.[1] Fuentes' trial counsel testified that he was familiar with the substance of the witnesses' testimony and had discussed it with Fuentes before her preliminary hearing. He also testified that he was aware of a video recording showing her shoplifting, which he also discussed with Fuentes. He testified that he met with Fuentes once or twice at his office and four or five times at the courthouse. He testified that she never offered a defense to the charge.

Fuentes' trial counsel also testified that she told him through a Spanish-speaking associate of his firm that she was present in the country unlawfully and "had no papers." He testified that he had no idea that she was a permanent resident until the day of the evidentiary hearing. He testified that he discussed the risk of deportation with her each time they met because that was her principal concern. He testified that he advised her that "her guilty plea would have consequences--immigration consequences to include the likelihood of deportation

---

[1] These witnesses included an employee of the store from which Fuentes was caught shoplifting and the arresting police officer. The employee testified that she personally observed Fuentes putting merchandise in her bag before exiting the store. The employee also testified that when she confronted Fuentes outside the store, Fuentes admitted taking the merchandise. The arresting officer likewise testified that Fuentes admitted taking the merchandise. The Director also introduced an exhibit listing 35 separate items of stolen merchandise recovered from Fuentes at the scene, with prices totaling $1540.11.

3

unless she was able to find some remedy through immigration." He also testified that the risk of deportation would be the same whether she was present lawfully or unlawfully. He testified that he advised her to consult with an immigration attorney because he did not specialize in immigration issues.

The circuit court thereafter entered a final order in which it found, based on the evidence adduced at the hearing, that "trial counsel adequately advised [Fuentes] of the immigration consequences of her guilty plea," and dismissed her petition for failure to satisfy the performance prong of the ineffective assistance test under Strickland v. Washington, 466 U.S. 668, 687 (1984). Alternatively, the court found that she failed to satisfy the prejudice prong of the test because she did not show that she would have pled not guilty and proceeded to trial if she had received competent advice. The evidence against her was overwhelming, especially in light of her admissions to the store employee and arresting officer that she had stolen the merchandise recovered from her at the scene. Thus, the record suggested that even if she had pled not guilty and gone to trial, she would have been convicted of the offense and the immigration consequences would have been the same. The court therefore denied the petition.

We awarded Fuentes this appeal.

## II. ANALYSIS

In her first assignment of error, Fuentes asserts that the circuit court erred by finding that her trial counsel provided competent representation. She argues that while immigration law is so complex it is essentially a legal specialty in itself, there was no uncertainty that her conviction would make her removable. Therefore, the language in the plea agreement that her plea "may place her at risk for deportation" and her trial counsel's advice that there was a "likelihood of deportation" were insufficient under Padilla v. Kentucky, 559 U.S. 356, 359 (2010) and United

4

States v. Akinsade, 686 F.3d 248, 254 (4th Cir. 2012) to inform her of the true consequences of the plea.

She further argues that her trial counsel's advice could not have been competent because he did not even know her correct immigration status. As a result, the advice he provided was relevant to an alien unlawfully present rather than to a permanent resident. She also argues that his testimony that the immigration consequences of her plea would be the same whether she was present lawfully or unlawfully is incorrect because those unlawfully present may be eligible for a petty offense exception under 8 U.S.C. § 1182(a)(2)(A)(ii)(II), which is unavailable to those lawfully present.

Whether a circuit court properly granted or denied a petition for habeas corpus is a mixed question of law and fact. Dominguez v. Pruett, 287 Va. 434, 440, 756 S.E.2d 911, 914 (2014). The habeas court's findings of historical fact "are entitled to deference and are binding upon this Court unless those findings are plainly wrong or without evidence to support them." Id. (internal quotation marks and citation omitted). In other words, when a court rules that an attorney did or did not advise his or her client of a particular point, it is a finding of fact that will not be disturbed if it is supported by evidence in the record. However, the court's legal conclusions are reviewed de novo. Id. Thus, this Court does not defer to the circuit court's determination of whether the advice the court found (as a matter of historical fact) that counsel gave the petitioner is constitutionally adequate.

In this case, the circuit court ruled that "trial counsel adequately advised [Fuentes] of the immigration consequences of her guilty plea." This ruling is a legal conclusion that is not entitled to deference upon appellate review. However, the court stated that it based its ruling on the evidence adduced at the evidentiary hearing, so we review that evidence in the light most favorable to the prevailing party below and give that party the benefit of all reasonable

5

inferences fairly drawn therefrom.  Ryland v. Manor Care, Inc., 266 Va. 503, 509, 587 S.E.2d 515, 519 (2003).

> To establish ineffective assistance of counsel a defendant must show both deficient performance by counsel and prejudice. . . .
> To establish deficient performance, a person . . . must show that counsel's representation fell below an objective standard of reasonableness.  A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance.  The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment.

Premo v. Moore, 562 U.S. 115, 121-22 (2011) (internal quotation marks and citations omitted).

Fuentes has not met this burden.  Her trial counsel's testimony establishes that he met with her multiple times, discussed the immigration consequences of the plea on each occasion because it was her principal concern, informed her that deportation was the likely consequence of the plea, and advised her to consult with an immigration attorney because he did not specialize in immigration.

This case therefore is clearly distinguishable from Padilla, where the petitioner's trial counsel affirmatively misadvised his client by telling him he didn't have to worry about any immigration consequences of his plea "since he had been in the country so long."  559 U.S. at 359 (internal quotation marks omitted).  It is likewise distinguishable from Akinsade, where the petitioner had been charged with one count of embezzlement by a bank employee, in violation of 18 U.S.C. § 656, and trial counsel affirmatively misadvised him that he could not be deported for a single conviction.  686 F.3d at 250.  Unlike those cases, Fuentes' trial counsel did not affirmatively misadvise her by assuring her that she would not be deported.

Fuentes' argument that the equivocation in counsel's advice (i.e., that there was a "likelihood of deportation") and in the plea agreement (i.e., that her plea "may place [her] at risk

6

for deportation") made the advice constitutionally inadequate is without merit. <u>Akinsade</u>, the case she cites, does not support this argument. The Unites States district court considering Akinsade's petition found that his trial counsel's performance had been constitutionally insufficient, and the prosecution agreed. 686 F.3d at 251 & n.3. Thus, only the prejudice prong of the ineffective assistance claim was at issue on appeal.

In any event, as Fuentes acknowledges on brief, although her conviction made her eligibility for deportation absolutely certain, there was no such certainty that she would actually be deported because the Attorney General retained discretion over her removal. 8 U.S.C. § 1227(a) describes classes of <u>deportable</u> aliens. It provides that any such alien shall be removed "upon the order of the Attorney General." Therefore, to the extent that the words "likelihood" and "may" in counsel's advice and in the plea agreement were equivocal, those words did not "show that counsel's representation fell below an objective standard of reasonableness" or "show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." <u>Premo</u>, 562 U.S. at 121-22 (internal quotation marks and citations omitted); <u>see also</u> <u>Padilla</u>, 559 U.S. at 374 (holding "that counsel must inform her client whether his plea carries a <u>risk of deportation</u>" (emphasis added)). To the contrary, those words were entirely accurate.

Fuentes' argument that trial counsel's advice was constitutionally inadequate because it was irrecoverably tainted by his belief that she was unlawfully present is also without merit. His belief arose directly from her statement that she was present unlawfully and "had no papers." It was not unreasonable for him to rely on her representation of her own immigration status and to provide immigration advice based on it.

Furthermore, a grand larceny conviction would make her equally deportable whether she was present lawfully or unlawfully. <u>Compare</u> 8 U.S.C. § 1182(a)(2)(A)(i)(I) (rendering an alien

7

inadmissable after conviction of a crime involving moral turpitude) with 8 U.S.C. § 1227(a)(2)(A)(i) (rendering admitted alien removable after conviction of a crime involving moral turpitude if committed within 5 years of admission and the offense is subject to a sentence of 1 year or longer).  Although the petty offense exception available for an unlawfully present alien under 8 U.S.C. § 1182(a)(2)(A)(ii)(II) may not have been available to a lawfully present alien, her trial counsel did not purport to be an expert versed in such subtleties.  To the contrary, he expressly informed her that he was not a specialist in immigration, advised her that she would be deportable unless she found a remedy within the immigration system, and advised her to consult with an immigration attorney.  Again, this advice does not fall below the constitutional standard of reasonableness articulated in Premo.

As the Supreme Court noted in Padilla, immigration law is its own complex specialty. 559 U.S. at 369.  However, the Court did not require that members of the criminal bar undertake the burden to become immigration specialists.  Id.; see also id. at 377 (Alito, J., concurring) (noting that many criminal defense attorneys have little understanding of immigration law). Rather, when the Court required defense counsel to give correct advice about the deportation consequences of a conviction, it also acknowledged that the opacity of immigration law for those who do not regularly practice in the field "will affect the scope and nature of [defense] counsel's advice."  Id. at 369 & n.10.

In this case, Fuentes' trial counsel correctly advised her that her conviction would likely result in her deportation, unless she found an exemption within the immigration system.  That advice was correct regardless of the lawfulness or unlawfulness of her presence.  He further

8

admitted that he was not an immigration attorney and advised her to consult one. On the facts of this case, his performance satisfied the constitutional standard of reasonableness.[2]

## III. CONCLUSION

For the foregoing reasons, we find no error in the circuit court's judgment.

Affirmed.

---

[2] Because we determine that Fuentes has not established that her trial counsel's performance was deficient, we need not reach her second assignment of error, in which she challenges the circuit court's alternative ruling that the she did not establish prejudice. Premo, 562 U.S. at 121.