IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35147-5-III |
| | ) | (consolidated with |
| Respondent, | ) | No. 35604-3-III) |
| | ) | |
| v. | ) | |
| | ) | |
| VICTOR A. VALDOVINOS VAZQUEZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| In the Matter of the Petition for Relief | ) | |
| from Personal Restraint of: | ) | |
| | ) | |
| VICTOR VALDOVINOS VAZQUEZ. | ) | |

LAWRENCE-BERREY, C.J. — Victor Valdovinos Vazquez (Valdovinos) appeals the

trial court's order denying his motion to vacate his guilty plea and conviction. He argues

he received ineffective assistance of counsel when his trial counsel did not correctly

advise him of the immigration consequences of his guilty plea. Here, trial counsel

advised him not to plead guilty until Valdovinos consulted with his retained immigration

attorney. This was good advice. Valdovinos ignored it and pleaded guilty. Because his trial counsel's advice was not deficient, we reject Valdovinos's claim and affirm the trial court.

FACTS

Valdovinos did not assign error to any of the trial court's findings of fact. We therefore take our facts from those findings.

On August 1, 2016, the State filed a criminal information against Valdovinos, alleging one count of residential burglary. Attorney Nicholas Yedinak appeared on behalf of Valdovinos.

Valdovinos is not a United States citizen. He came to the United States when he was in grade school, around 2005. Shortly after he was charged, Valdovinos's family retained attorney Brent De Young to provide their son with advice about the immigration consequences of his criminal case and also to consult with Yedinak.

De Young telephoned Yedinak and said he was aware of an unfiled drug possession case against Valdovinos. In the telephone call, De Young mentioned to Yedinak his concerns about the immigration consequences of the drug possession case.

On or shortly before September 1, 2016, the State made a plea offer to Valdovinos through Yedinak. Yedinak e-mailed an outline of the plea offer to De Young. De Young responded and offered specific immigration advice to Yedinak concerning the plea offer.

The parties set a change of plea hearing for September 6, 2016. That same day, the State approached Yedinak and offered to resolve Valdovinos's unfiled drug possession case. The State offered to include the unfiled drug offense under the residential burglary case and to request no additional jail time for that offense.

Yedinak did not call or discuss the new plea offer with De Young because the offer came up at the last moment in court. The new plea offer required Valdovinos to plead guilty to first degree theft, criminal trespass in the first degree, and possession of a controlled substance, methamphetamine.

Yedinak discussed the new plea offer with Valdovinos. He advised Valdovinos to consult with De Young about the immigration consequences of the new charge before entering a plea of guilty. He specifically told Valdovinos that the new drug charge may adversely affect his immigration status. Valdovinos decided against consulting with De Young and decided to plead guilty to the amended charges.

A court interpreter assisted Valdovinos at the plea hearing. The record of the plea hearing establishes that Valdovinos was advised of his constitutional rights and the

3

consequences of pleading to the charges. The trial court asked Valdovinos whether he wanted additional time to consult with his immigration attorney. Valdovinos declined. The trial court also asked Valdovinos if he was aware that pleading guilty might lead to his deportation. Valdovinos answered, "'yes.'" Clerk's Papers (CP) at 190. Valdovinos then pleaded guilty to the amended charges, and the trial court accepted his plea.

Just over two months later, Valdovinos filed a motion to withdraw his guilty plea and conviction. The trial court held a hearing, heard testimony, and reviewed the declarations pertaining to the motion. The trial court subsequently issued a memorandum opinion denying Valdovinos's motion. The memorandum opinion carefully sets forth the facts found by the trial court and its legal analysis. The trial court later signed findings of fact and conclusions of law. In its findings of fact, the trial court adopted its findings in its memorandum opinion.

Valdovinos appealed.

ANALYSIS

Valdovinos claims he received ineffective assistance of counsel when his trial counsel did not advise him that pleading guilty to the drug felony would lead to deportation.

*Ineffective assistance of counsel*

The Sixth Amendment to the United States Constitution right to effective assistance of counsel encompasses the plea process. *State v. Sandoval*, 171 Wn.2d 163, 169, 249 P.3d 1015 (2011). Defense counsel's erroneous advice can render the defendant's guilty plea involuntary or unintelligent. *Id.* To establish that the plea was involuntary or unintelligent, the defendant must satisfy the two-part test for ineffective assistance of counsel established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Sandoval*, 171 Wn.2d at 169.

To establish ineffective assistance of counsel, the defendant must show deficient performance and that the deficient performance prejudiced the defendant. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 840, 280 P.3d 1102 (2012). To prove deficient performance, the defendant must show that the representation fell below an objective standard of reasonableness. *Id.* at 842. To show prejudice, the defendant must show a reasonable probability that, absent the error, the result would have been different. *Id.* In analyzing such a claim, the appellate court starts with a presumption that counsel's representation was effective. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). Competency of counsel is determined based on the entire record below. *Id.*

With regard to immigration consequences, if the applicable immigration law is truly clear that an offense is deportable, the defense attorney must advise the defendant

5

that pleading guilty will lead to deportation. *Sandoval*, 171 Wn.2d at 170 (citing *Padilla*

*v. Kentucky*, 559 U.S. 356, 369, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010)). If the

potential for deportation is not clear, then defense counsel must provide a general

warning that a guilty plea may carry the risk of adverse immigration consequences. *Id.*

*Padilla* provides an example when the immigration consequences are truly clear.

*Sandoval*, 171 Wn.2d at 171. There, Jose Padilla pleaded guilty to transporting a

significant amount of marijuana in his truck, an offense that was deportable under

8 U.S.C. § 1227(a)(2)(B)(i):

> "Any alien who at any time after admission has been convicted of a
> violation of (or a conspiracy or attempt to violate) any law or regulation . . .
> relating to a controlled substance . . . , other than a single offense involving
> possession for one's own use of 30 grams or less of marijuana, is
> *deportable*."

*Sandoval*, 171 Wn.2d at 171 (alterations in original) (quoting *Padilla*, 559 U.S. at 368).

In *Padilla*, the United States Supreme Court held that simply reading the text of the

statute would have alerted Mr. Padilla's counsel that a guilty plea would render Mr.

Padilla eligible for removal. 559 U.S. at 368.

*Padilla* involves the typical case where defense counsel does not know the

immigration consequence of a plea but nevertheless proceeds forward without adequately

warning the client. This is not the typical case. Here, the State's late amendment of

charges at the plea hearing deprived defense counsel of the typical ability to determine the immigration consequence of the plea. For this reason, defense counsel advised his client to consult with his retained immigration attorney before pleading guilty. This was good advice. Valdovinos rejected this good advice and pleaded guilty. Good advice is not rendered deficient simply because the client rejects it.

By declaration filed in the trial court, Valdovinos claimed he pleaded guilty because he thought De Young had already approved the plea for immigration consequences. The trial court found this claim unbelievable:

> It was Mr. Yedinak's impression that the defendant wanted to get the case over that day. . . . The Court discounts defendant's self-serving declaration in light of the weight of the evidence presented in Mr. Yedinak's written declaration and testimony. Furthermore, the court is mindful that during the trial court's colloquy with defendant during the plea hearing the court gave defendant an opportunity to speak with his immigration attorney prior to pleading, and warned defendant of the potential adverse immigration consequences of pleading guilty. Even with the trial court's additional warnings the defendant still wished to go forward with the plea.

CP at 191.

Because Valdovinos cannot establish that his trial counsel performed deficiently, we conclude he did not receive ineffective assistance of counsel.

7

No. 35147-5-III; No. 35604-3-III
*State v. Valdovinos Vazquez*; *PRP of Valdovinos Vazquez*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Lawrence-Berrey, C.J.

I CONCUR:

Korsmo, J.

8

No. 35147-5-III
(consolidated with
No. 35604-3-III)

FEARING, J. (concurring) — I agree with the majority's ruling to affirm the trial court's denial of Victor Valdovinos Vazquez's motion to vacate his guilty plea to three charges in Douglas County Superior Court. I would, however, rest the affirmation on the lack of prejudice prong rather than the negligent performance of counsel prong of the ineffective assistance of counsel analysis. Valdovinos Vazquez's plea counsel should have known that a guilty plea to possession of methamphetamine merited deportation and should have warned Valdovinos Vazquez that pleading guilty would lead to certain deportation or near certain deportation. Nevertheless, the facts show that Valdovinos Vazquez would have pled guilty even if plea counsel properly advised him. Therefore, I concur with a separate opinion.

PROCEDURAL BACKGROUND

I add some details to the majority's factual recitation. Victor Valdovinos Vazquez is not a United States citizen. He entered the United States as a child in 2005. Shortly after the filing of the original information on August 1, 2016, Valdovinos Vazquez's family retained attorney Brent De Young to provide immigration advice to Valdovinos

Vazquez. We do not know the full extent of Valdovinos Vazquez's family, where the family resides, or family members' respective immigration status.

Neither party provided this court the background to the criminal charges or cited to the record any information underlying the charges. In a declaration in support of the motion to vacate the guilty plea, Brent De Young averred that he questioned the validity of a search or seizure after reviewing police reports. The record does not enlighten us regarding the nature of the concerns.

At the time of the plea hearing, Victor Valdovinos Vazquez was subject to an immigration hold, whereby state authorities detain an undocumented immigrant already in jail for transfer to the United States Immigration and Custom Enforcement. During the plea hearing, when the State presented Valdovinos Vazquez an offer to resolve all charges, including the unfiled charge of possession of a controlled substance, Valdovinos Vazquez's plea counsel, Nicholas Yedinak, advised Valdovinos Vazquez to delay the plea one week so that plea counsel, Valdovinos Vazquez, or both could discuss the new offer with immigration counsel, Brent De Young. Plea counsel knew that the new drug possession charge may have adverse immigration consequences based on his recent discussion with De Young. Plea counsel warned Valdovinos Vazquez that a plea to the drug charge could have negative immigration consequences. Counsel did not expressly tell Valdovinos Vazquez that he "would" be deported if he pled to a drug possession

2

offense. Counsel concluded that Valdovinos Vazquez wanted to resolve the state prosecutions that day.

In a declaration in support of his motion to vacate the guilty plea, Victor Valdovinos Vazquez averred that plea counsel failed to inform him that his plea, during the plea hearing, entailed additional charges beyond criminal trespass. He also declared that someone told him that plea counsel e-mailed Brent De Young a copy of the plea agreement. Valdovinos Vazquez did not disclose the identity of the someone. According to Valdovinos Vazquez, his sister informed him that immigration lawyer Brent De Young advised that the plea agreement did not contain any deportable convictions. Therefore, Valdovinos Vazquez concluded "it was safe for [him] to plead guilty." Clerk's Papers (CP) at 62. Valdovinos Vazquez's declaration fails to note, however, whether he believed that Brent De Young received the revised plea agreement or only the initial plea agreement. The trial court entered findings, under which the court rejected these averments of Valdovinos Vazquez.

Before entering his plea of guilty to the charges of first degree theft, criminal trespass in the first degree, and possession of a controlled substance, methamphetamine, Victor Valdovinos Vazquez signed a document titled notice regarding immigration consequences. The notice read, in part:

3

> You are not required to disclose your immigration or citizenship status to the court. But if you are not a citizen of the United States you should tell your lawyer, even if you do not have legal immigration status to be here, because you have the right to receive advice from your lawyer about the specific consequences and risks that your case may have on your immigration status. Depending on the facts of your case, a plea of guilty or a conviction at trial can result in your deportation and may have other negative immigration consequences, such as preventing you from gaining citizenship or lawful status to remain in the United States. In some cases, if you are convicted, detention and deportation will be required. Defense counsel must advise a non-citizen client of adverse immigration consequences. You are not entitled to an immigration lawyer at public expense.

CP at 29.

In support of his motion to vacate the guilty plea, Victor Valdovinos Vazquez declared:

> This was a mistake that I pleaded to these charges. I want the court to vacate my conviction so I can solve my case so that I won't be automatically deported.

CP at 38. Valdovinos Vazquez does not expressly testify that he did not know that he would be deported or, if he had known, he would not have pled guilty to the three charges.

## IMMIGRATION LAW

I begin with an account of immigration law. United States authorities can deport any immigrant, including those with green cards, if he or she violates federal immigration laws. The most common reason for removal is evidence of the

4

commission of a crime. Under current federal immigration law, the drastic measure of deportation is now virtually inevitable for a vast number of noncitizens convicted of crimes. *Padilla v. Kentucky*, 559 U.S. 356, 360, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010).

Authorities can deport an immigrant who commits either a "crime of moral turpitude" under certain conditions, an "aggravated felony," or other designated crimes. 8 U.S.C. § 1227(2). The specially designated crimes include illegal firearms possession or sales, espionage, domestic violence, stalking, child abuse or neglect, human trafficking, terrorist activity, and, critical for purposes of this appeal, drug crimes, including possession of any controlled substance other than marijuana of thirty grams or less. 8 U.S.C. § 1227(a)(2)(B). 8 U.S.C. § 1227(a)(2)(B)(i) declares:

> Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation . . . relating to a controlled substance . . . , other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

By listing a series of crimes separately, the law ensures that immigrants cannot attempt to defend against deportation by arguing about whether or not the conviction counts as a crime of moral turpitude or aggravated felony.

5

ATTORNEY DEFICIENT PERFORMANCE

RCW 10.40.200, adopted in 1983, demands that accused noncitizens be warned of

possible immigration consequences of a guilty plea. That statute reads, in pertinent part:

> (2) Prior to acceptance of a plea of guilty to any offense punishable
> as a crime under state law, except offenses designated as infractions under
> state law, the court shall determine that the defendant has been advised of
> the following *potential consequences* of conviction for a defendant who is
> not a citizen of the United States: Deportation, exclusion from admission to
> the United States, or denial of naturalization pursuant to the laws of the
> United States. . . . If . . . the defendant has not been advised as required by
> this section and the defendant shows that conviction of the offense to which
> the defendant pleaded guilty may have the consequences for the defendant
> of deportation, exclusion from admission to the United States, or denial of
> naturalization pursuant to the laws of the United States, the court, on
> defendant's motion, shall vacate the judgment and permit the defendant to
> withdraw the plea of guilty and enter a plea of not guilty. . . .

(Emphasis added.) Victor Valdovinos Vazquez's plea counsel and the trial court warned

him of the potential consequences of pleading guilty to drug possession. Neither,

however, told Valdovinos Vazquez that the government would automatically,

presumptively, or practically inevitably deport him. To argue that the failure to receive

this additional or unequivocal warning voided his guilty plea, Valdovinos Vazquez relies

on constitutional principles.

Victor Valdovinos Vazquez asks this court to direct the vacation of his guilty plea

on the ground that plea counsel provided him constitutionally ineffective assistance of

counsel. In this appeal, Valdovinos Vazquez does not contend that counsel should have

6

refused to proceed with the entry of the plea or insisted on a continuance of the plea hearing. Valdovinos Vazquez contends that plea counsel should have warned him that a plea of guilty to the drug charge would have led to deportation or plea counsel should have telephoned immigration counsel before entry of the plea. Valdovinos Vazquez does not maintain that plea counsel should have provided further immigration advice such as the consequences of the plea on an ability to return to the United States after deportation.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee an accused the right to the assistance of counsel. The right to counsel guaranteed in article I, section 22 of the Washington Constitution provides the same protection as the Sixth Amendment. *State v. Medlock*, 86 Wn. App. 89, 99, 935 P.2d 693 (1997).

To establish ineffective assistance of counsel, a defendant must satisfy a two-part test (1) that his or her counsel's assistance was objectively unreasonable and (2) that, as a result of counsel's deficient assistance, he or she suffered prejudice. *Strickland v. Washington*, 466 U.S. 668, 690, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To demonstrate the first prong, deficient performance, a reviewing court adjudges the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. *Strickland v. Washington*, 466 U.S. at 690. This court gives great deference to trial counsel's performance and begins the analysis with a

7

strong presumption of effective counsel. *State v. West*, 185 Wn. App. 625, 638, 344 P.3d 1233 (2015). Deficient performance falls below an objective standard of reasonableness based on consideration of all the circumstances. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). The accused bears the burden to prove ineffective assistance of counsel. *State v. McFarland*, 127 Wn.2d at 335.

Courts cannot exhaustively define the obligations of counsel or form a checklist for judicial evaluation of attorney performance. *Strickland v. Washington*, 466 U.S. at 688 (1984). Nevertheless, effective representation entails certain basic duties, such as the overarching duty to advocate the defendant's cause. *Strickland v. Washington*, 466 U.S. at 688; *In re Personal Restraint of Yung-Cheng Tsai*, 183 Wn.2d 91, 100, 351 P.3d 138 (2015). Effective representation extends to all critical stages in the proceedings, including the plea process. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). Reasonable conduct for an attorney includes researching the law. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). A defense attorney has a basic duty to know and apply relevant statutes. *In re Personal Restraint of Yung-Cheng Tsai*, 183 Wn.2d at 101-02. An attorney's ignorance of a point of law fundamental to his or her client's case combined with his failure to perform basic research on that point poses as a quintessential example of unreasonable performance. *Hinton v. Alabama*, 571 U.S. 263, 274, 134 S. Ct. 1081, 188 L. Ed. 2d 1 (2014).

8

The leading American decision on effective assistance of counsel in the context of immigration law is *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). The decision compels a conclusion that plea counsel should have known that a plea to a methamphetamine possession charge would lead to mandatory deportation of Victor Valdovinos Vazquez. Counsel should have told Valdovinos Vazquez that pleading guilty to the charge would lead to deportation rather than simply warning Valdovinos Vazquez that his plea "could have" immigration consequences.

In *Padilla v. Kentucky*, the Supreme Court explained that, because of deportation's "close connection" to the criminal process, advice about deportation consequences falls within "the ambit of the Sixth Amendment right to counsel." *Padilla v. Kentucky*, 559 U.S. at 366. *Padilla* states that because "[i]mmigration law can be complex," the precise advice required depends on the clarity of the law. *Padilla v. Kentucky*, 559 U.S. at 369. If the applicable immigration law "is truly clear" that an offense is deportable, defense counsel must correctly advise the defendant that pleading guilty to that particular charge would lead to deportation. *Padilla v. Kentucky*, 559 U.S. at 369. If "the law is not succinct and straightforward," counsel must provide only a general warning that "pending criminal charges may carry a risk of adverse immigration consequences." *Padilla v. Kentucky*, 559 U.S. at 369.

*Padilla v. Kentucky* explicitly rejected the proposition that only affirmative

9

misadvice about deportation consequences of the plea, and not failure to give such advice, could constitute ineffective assistance of counsel. *Padilla* also emphasized that for "at least the past 15 years, professional norms have generally imposed an obligation on counsel to provide advice on the deportation consequences of a client's plea." *Padilla v. Kentucky*, 559 U.S. at 372.

In *Padilla v. Kentucky*, the defendant pled guilty to transporting a significant amount of marijuana in his truck, an obviously deportable offense under 8 U.S.C. § 1227(a)(2)(B)(i), the statute at issue in Victor Valdovinos Vazquez's deportation. To repeat, the statute intones:

> Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation . . . relating to a controlled substance . . . , other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

The nation's high court deemed this statute "succinct, clear, and explicit in defining the removal consequence for Padilla's conviction." *Padilla v. Kentucky*, 559 U.S. at 368. By simply "reading the text of the statute," Padilla's lawyer could have determined that a plea of guilty would render Padilla eligible for removal. *Padilla v. Kentucky*, 559 U.S. at 368. Counsel was thus ineffective for misadvising Jose Padilla that he need not worry about immigration status because of his lengthy stay in the country. *Padilla v. Kentucky*, 559 U.S. at 359, 368-69.

10

Sound reason requires criminal defense counsel to maintain a general knowledge of immigration law. The Washington Supreme Court recognizes:

> [T]he deportation consequence of his guilty plea is also "a particularly severe 'penalty.'" For criminal defendants, deportation no less than prison can mean "banishment or exile," and "separation from their families."

*State v. Sandoval*, 171 Wn.2d 163, 175-76, 249 P.3d 1015 (2011) (internal citations omitted).

By the time of Victor Valdovinos Vazquez's plea in 2016, all criminal defense attorneys throughout the United States, particularly in agricultural regions such as Douglas County, should have read and been acquainted with the rules announced in *Padilla v. Kentucky*. All criminal defense attorneys should have read and been acquainted with the principal statute addressed in *Padilla*: 8 U.S.C. § 1227(a)(2)(B)(i). By reading the case and statute, Valdovinos Vazquez's plea counsel should have advised Valdovinos Vazquez that his plea of guilty to possession of methamphetamine would definitely lead to deportation. Valdovinos Vazquez needed no immigration law specialist to advise him of the consequences of pleading guilty to possession of a controlled substance. The law lacked any subtlety on this question.

Although *Padilla v. Kentucky* involved transportation of a controlled substance, rather than possession of a controlled substance, under immigration law, this distinction

11

lacks a difference. Although *Padilla* also involved affirmative misadvice by plea counsel, anyone reading *Padilla* and 8 U.S.C. § 1227 would know to warn the client of mandatory deportation for the crime of possession of methamphetamine. Such knowledge did not require a criminal defense attorney to become an immigration law specialist.

The State argues that plea counsel met his obligation to effectively represent Victor Valdovinos Vazquez by advising him to delay the plea one week in order to discuss the new plea agreement with immigration counsel, Brent De Young. I disagree. All criminal defense counsel should readily know that a noncitizen accused will be deported on pleading guilty to a methamphetamine possession charge. Plea counsel is not entitled to the excuse of telling his client to delay proceedings to speak with an immigration attorney.

The majority holds that plea counsel's advice to postpone the plea hearing constituted effective counsel. I agree that this recommendation, in isolation, did not violate the attorney's standard of care. But the holding fails to recognize that counsel uttered the guidance for the purpose of Victor Valdovinos Vazquez conferring with immigration counsel. In addition to recommending a one-week continuance, plea counsel should have told Valdovinos Vazquez that his plea would lead to virtual deportation.

12

Admittedly immigration is a complicated area of the law and a niche specialty for attorneys. *Zhang v. United States*, 543 F. Supp. 2d 175, 184 (E.D.N.Y. 2008). Immigration law could be complex and situations could arise when the deportation consequences of a particular plea are uncertain or unclear. *Padilla v. Kentucky*, 559 U.S. at 369-74. But determining that a noncitizen client will be deported if he pleas to a drug offense is not complicated.

Washington's Defender Association has free resources regarding the immigration consequences of various Washington convictions. One may find numerous practice advisories available on its web site, including one regarding drug possession offenses. (*Resources: Drug Possession Practice Advisory*, WASH. DEFENDER ASS'N, https://defensenet.org/resources/drug-possession-practice-advisory/ (rev. Nov. 26, 2013)). The advisory warns that "[a] conviction for violation of . . . any law or regulation . . . relating to a controlled substance (CS), ***including attempt and conspiracy to possess***, will trigger grounds for deportation and inadmissibility."

Four decisions support my conclusion. In *People v. Guzman-Ruiz*, 2014 IL App (3d) 120150, 379 Ill. Dec. 478, 6 N.E.3d 806, Jovita Guzman-Ruiz pled guilty to unlawful possession of cannabis with intent to deliver. After her deportation, she sought vacation of her guilty plea because her plea attorney commented about the uncertainty of deportation. The Illinois Court of Appeals held that counsel performed ineffectively.

13

The court observed that, under 8 U.S.C. § 1227(a)(2)(B)(i), anyone convicted of a violation of law relating to a controlled substance, other than possession of thirty grams or less of marijuana for one's own use, is deportable. Even if defense counsel had not researched the statute, he, as someone with many immigrant clients, should have been familiar with *Padilla v. Kentucky*.

*Commonwealth v. Henry*, 88 Mass. App. Ct. 446, 38 N.E.3d 312 (2015), also supports my conclusion. The state court convicted Liston Henry, a lawful permanent resident of the United States, of violation of an abuse prevention order and witness intimidation. Henry's plea counsel did not remember what immigration advice he provided Henry, but counsel stated that, whenever he suspected potential immigration consequences, he would recommend to the client to communicate with an immigration attorney. The Massachusetts court held counsel's advice to be defective because counsel could easily read 8 U.S.C. § 1227 and determine that the convictions rendered Henry eligible for deportation. The receipt of written warnings that the conviction might bear immigration consequences and advice to consult an immigration attorney fell short. The court wrote:

> "[C]ounsel therefore was obligated to provide his client, in language that the client could comprehend, the information that presumptively mandatory deportation would have been the legal consequence of pleading guilty. Stated differently, counsel needed to convey that, if Federal

14

authorities apprehended the defendant, deportation would be practically inevitable."

*Commonwealth v. Henry*, 38 N.E.3d at 319 (quoting *Commonwealth v. DeJesus*, 468 Mass. 174, 9 N.E.3d 789, 795 (2014)).

*Ex Parte Torres*, 483 S.W.3d 35 (Tex. Crim. App. 2016) also bolsters my conclusion. Defense counsel told defendant's brother that the family should hire an immigration lawyer because the public defender's office only handles criminal charges. Plea counsel nonetheless warned the brother that the charges could lead to deportation of the defendant. Counsel later acknowledged that he had never independently reviewed the Immigration and Nationality Act, but that he attended a seminar on the subject. The reviewing court agreed with the lower court that counsel performed ineffectively by failing to warn of presumptive mandatory deportation. Manuel Torres pled guilty to possession of cocaine and robbery. Because of the nature of the convictions, counsel held an obligation to inform Torres that deportation was a virtual certainty.

In *State v. Gallegos-Delgado*, 2017-NMCA-031, 392 P.3d 200, the New Mexico Court of Appeals held that plea counsel failed to properly advise her client of mandatory deportation upon pleading guilty to possession of cocaine. According to New Mexico's extension of *Padilla v. Kentucky* dogma, defense attorneys must advise their clients if

15

they will be deported and conduct an individualized analysis of the apparent immigration consequences.

I note that some federal and foreign decisions hold that criminal defense counsel adequately represented a noncitizen accused when advising the client to seek immigration counsel before pleading to a criminal charge. *Chhabra v. United States*, 720 F.3d 395, 407-08 (2d Cir. 2013); *Zhang v. United States*, 543 F. Supp. 2d at 183-84 (E.D.N.Y. 2008); *People v. Carranza-Lamas*, 2015 IL App (2d) 140862, 395 Ill. Dec. 367, 38 N.E.3d 553, 563-65; *Fuentes v. Clarke*, 290 Va. 432, 438-39, 777 S.E.2d 550 (2015). These decisions conflict with the teaching of *Padilla v. Kentucky*.

One might argue that Victor Valdovino Vazquez must provide an opinion from a licensed attorney that plea counsel violated the standard of care when failing to tell him that he would be deported. Although Valdovinos Vazquez's immigration counsel afforded the superior court a declaration, counsel does not expressly opine that plea counsel violated the standard of care. Although expert testimony might help, the law does not require such testimony in all ineffective assistance of counsel claims. Jose Padilla, in *Padilla v. Kentucky*, did not present an expert opinion that his counsel violated the standard of care.

Victor Valdovinos Vazquez's trial court found that plea counsel performed adequately. I must accept the underlying facts as found by the trial court as verities,

16

particularly since Valdovinos Vazquez assigns no error to the findings. *State v. Stenson*, 132 Wn.2d 668, 697, 940 P.2d 1239 (1997). Nevertheless, the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact. *Strickland v. Washington*, 466 U.S. at 687 (1984). I must review anew the legal consequences of those facts. The ruling as to whether the advice given was inadequate is a legal conclusion not entitled to deference on appellate review. *Chhabra v. United States*, 720 F.3d at 406-07; *Fuentes v. Clarke*, 290 Va. at 439.

## PREJUDICE

Because I conclude that plea counsel failed to comply with constitutional standards of effective representation, I must determine whether Victor Valdovinos Vazquez fulfills the second prong of the ineffective assistance of counsel test. A defendant establishes prejudice under *Strickland v. Washington* by showing that, but for counsel's alleged deficiency, he would not have pled guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. at 59 (1985); *State v. Sandoval*, 171 Wn.2d at 174-75 (2011).

Even if the defendant went to trial, a jury could still find the defendant guilty of the crime such that the defendant would become subject to mandatory deportation anyway. Therefore, the State might argue that the accused suffers no prejudice by ineffective advice if the State bears overwhelming evidence of guilt. In settings other

17

than pleas, the determination whether counsel's error "prejudiced" the defendant depends largely on whether the defendant would have succeeded at trial. *Evans v. Meyer*, 742 F.2d 371, 375 (7th Cir. 1984).

In the context of guilty pleas, most courts require that the defendant convince the court that a decision to reject the plea bargain would have been rational under the circumstances. *Padilla v. Kentucky*, 559 U.S. at 372 (2010); *Ex Parte Torres*, 483 S.W.3d at 47-48 (Tex. Crim. App. 2016); *People v. Guzman*, 2014 IL App (3d) 090464, 388 Ill. Dec. 551, 24 N.E.3d 831, 839. A Massachusetts court held that the defendant may establish that such a choice would have been rational under the circumstances by showing that (1) he or she had an available, substantial ground of defense that would have been pursued if he or she had been correctly advised of the dire immigration consequences attendant to accepting the plea bargain, (2) there is a reasonable probability that a different plea bargain absent such consequences could have been negotiated at the time, or (3) the presence of special circumstances that support the conclusion that he placed, or would have placed, particular emphasis on immigration consequences in deciding whether to plead guilty. *Commonwealth v. Cano*, 87 Mass. App. Ct. 238, 247, 28 N.E.3d 491 (2015). Special circumstances could be medical difficulties or a mental disability that demands assistance from family members inside the United States.

18

*Commonwealth v. Cano*, 87 Mass. App. Ct. 238; *People v. Sifuentes*, 2017 COA 48M, 410 P.3d 730.

A Texas court ruled that factors to consider when analyzing whether rejecting a plea offer to be rational include the evidence supporting the defendant's assertions, the likelihood of success at trial, the risks the applicant would have faced at trial, the benefits received from the plea bargain, and the trial court's admonishments regarding possible deportation. *Ex Parte Torres*, 483 S.W.3d at 48 (Tex. Crim. App. 2016). An Illinois court ruled that the defendant must also either assert a claim of actual innocence or articulate a plausible defense that could have been raised at trial. *People v. Carranza-Lamas*, 38 N.E.3d at 561. To the contrary, one federal circuit held that defendant need prove only that the decision to go to trial was rational, not that he would have likely prevailed at trial. *United States v. Orocio*, 645 F.3d 630, 643 (3d Cir. 2011).

Unlike the law on the immigration consequences to pleading guilty of a controlled substance offense, Washington's law on whether an accused must show that a decision to go to trial would be rational is unclear. In *State v. Martinez*, 161 Wn. App. 436, 443, 253 P.3d 445 (2011), this court held that the accused need not show that going to trial would be rational. The *Martinez* court cited *State v. Sandoval*, 171 Wn.2d 163 (2011), for this proposition. But *Martinez* is written as if its author never read *Sandoval*. *Sandoval* does not support this position, but instead our Supreme Court wrote in *Sandoval* that:

> "[A] defendant challenging a guilty plea must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." A "reasonable probability" exists if the defendant "convince[s] the court that a decision to reject the plea bargain would have been rational under the circumstances." This standard of proof is "somewhat lower" than the common "preponderance of the evidence" standard.

*State v. Sandoval*, 171 Wn.2d at 174-75 (second alteration in original) (internal citations omitted). Thus, according to the higher court, rationality remains a factor.

Victor Valdovinos Vazquez contends on appeal that as long as he writes in his brief that he would have not accepted the plea, had he known of the immigration consequences, he shows prejudice. He cites for support of this argument: *State v. Sandoval*, 171 Wn.2d 163 (2011) and *State v. Martinez*, 161 Wn. App. 436 (2011).

This court's decision in *State v. Martinez* reads as Victor Valdovinos Vazquez claims it reads. *State v. Sandoval* does not. This court wrote in *Martinez*:

> In *Sandoval*, the court found prejudice where Mr. Sandoval stated in his brief that he would not have accepted the plea and counsel admitted Mr. Sandoval "was 'very concerned'" about the risk of deportation. The *Sandoval* court found this to be sufficient, even though it was not "rational" that Mr. Sandoval would proceed to trial instead of accepting a plea deal given the disparity in punishment (if Mr. Sandoval were convicted of second degree rape, he faced a standard sentencing range of 78-102 months' imprisonment versus his plea to third degree rape, which subjected him to just 6-12 months).

*State v. Martinez*, 161 Wn. App. at 442 (internal citation omitted).

20

*State v. Sandoval* does not read as this court claimed in *State v. Martinez*. Instead, the Washington Supreme Court observed that Valentin Sandoval swore that he would have rejected the plea offer had he known the deportation consequence. Furthermore, Sandoval's counsel testified that Sandoval was "very concerned" at the time of the plea of the risk of deportation and Sandoval told counsel he did not wish to plea if the plea would lead to deportation. *State v. Sandoval*, 171 Wn.2d at 175-76.

Our *Martinez* odd ruling should be discounted because of its misreading of *State v. Sandoval* and because the ruling allows the defendant to show prejudice without any evidence. One court has held that prejudice may not be shown by the defendant's self-serving statements alone and requires some corroborating evidence. *State v. Gallegos-Delgado*, 2017-NMCA-031, 392 P.3d 200, 207.

In *Ex Parte Torres*, 483 S.W.3d 35 (Tex. Crim. App. 2016), the appellate court held that plea counsel performed ineffectively when advising Manuel Torres about immigration consequences of his plea. Nevertheless, the court denied Torres relief because of a lack of showing of prejudice. Torres never testified in his sworn affidavit that, had he known of the full immigration consequences of the plea, he would have opted for trial. The record also lacked any mention that Torres could have gained a better plea agreement by rejecting the plea offer that he accepted. Torres' rejection of his plea counsel's advice to seek input from an immigration lawyer suggested that Torres was

21

more concerned about getting out of jail than deportation. Finally, the record lacked any basis for a defense to the charges.

I need not decide what, if any, additional facts Victor Valdovinos Vazquez must demonstrate, in order to show prejudice. Valdovinos Vazquez argues that he would not have agreed to the plea but for his trial counsel's deficient performance and thus was prejudiced. But he does not support this assertion with facts. In his declaration, Valdovinos Vazquez claims that he made a mistake when pleading guilty to methamphetamine possession. But that claim says nothing about whether he would have withheld the plea of guilty on September 6, 2016, had he been properly advised. He may just have remorse for electing to proceed with the entry of the plea. Valdovinos Vazquez does not aver in his declaration that he would not have entered the plea agreement.

The surrounding facts show that Victor Valdovinos Vazquez probably would have entered the plea even if plea counsel accurately advised him of immigration law. On the one hand, Valdovinos Vazquez's family had hired immigration counsel for him, evidence that Valdovinos Vazquez, or at least his family, held concern over immigration consequences. Nevertheless, Valdovinos Vazquez posits no defense to the drug charges and does not disclose his chance of prevailing at trial. He received a good deal from the State. Despite being advised to delay the plea in order to gain input from his immigration counsel, he proceeded to plead guilty. His plea counsel warned him the plea could have

22

immigration consequences.  No facts indicate the State would have withdrawn the

beneficial offer if Valdovinos Vazquez postponed his decision to plea.

Victor Valdovinos Vazquez did not assert any special circumstances with regard

to a need to remain in the United States.  He does not claim to have a wife or children in

the United States.

Fearing, J.